ACCEPTED
12-15-00033-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
5/18/2015 9:57:20 PM
CATHY LUSK
CLERK

## CASE NO. 12-15-00033-CV

IN THE COURT OF APPEALS FOR THE
TWELFTH APPELLATE DISTRICT OF TEXAS
AT TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

5/18/2015 9:57:20 PM

CATHY S. LUSK
Clerk

DIRECT APPEAL FROM

**JERRY BYROM, DIMPLE BYROM, and DOROTHY BERRY,
APPELLANTS**
**VS.**
**JILL CAMPBELL PENN as COURT APPOINTED RECEIVER,
APPELLEE**

THE 4th JUDICIAL DISTRICT COURT OF RUSK COUNTY, TEXAS

CAUSE NO. 2013-18

COLLATERAL APPEAL FROM

IN THE ESTATE OF RUBY RENEE BYROM, DECEASED

IN THE COUNTY COURT AT LAW OF CHEROKEE COUNTY, TEXAS

CAUSE NO. 10745-CV

## BRIEF OF APPELLANTS

JOE SHUMATE
State Bar No.  18327500
107 North Main Street
P. O. Box 1915
Henderson, Texas  75653-1915
(903) 657-1416
(903) 655-8211
Attorney for Appellants

**ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF INTERESTED PARTIES - DIRECT APPEAL

The undersigned counsel of record for Appellant certifies that the following listed persons have an interest in the outcome of this case. These representations are made so that this Court may evaluate possible disqualifications or recusal.

**APPELLANT**

Jerry Byrom, Appellant
Dimple Byrom, Appellant
Dorothy Berry, Appellant

**COUNSEL**

Joe Shumate
State Bar No. 18327500
107 North Main Street
P. O. Box 1915
Henderson, Texas 75653
Tel: (903) 657-1416
Fax: (903) 655-8211

Associate Attorney, James J. Rosenthal
On the brief for Appellants

**APPELLEE**

Jill Campbell Penn, as
Court-Appointed Receiver

**COUNSEL**

Joseph F. Zellmer
Joseph F. Zellmer, P.C.
620 West Hickory St.
Denton, Texas 76201
Tel: (940) 383-2674

**TRIAL COURT JUDGE**

Hon. J. Clay Gossett
Cherokee County Courthouse
115 North Main Street, Ste. 303
Henderson, Texas 75652
Tel: (903) 657-0358

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    1.    ISSUE 1: THE DECREE ORDERING SALE OF REAL PROPERTY (APPELLANTS' HOMESTEAD), AND UNDERLYING ORDERS IMPRESSING A CONSTRUCTIVE TRUST UPON THE APPELLANT'S HOMESTEAD OR COMPELLING THE FORCED SALE OF APPELLANTS' HOMESTEAD, ARE VOID AS A MATTER OF LAW... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    2.    ISSUE 2: THE ORDER TO PAY ATTORNEY FEES CONTAINED IN THE DECREE ORDERING SALE OF REAL PROPERTY AND UNDERLYING ORDERS IMPRESSING A CONSTRUCTIVE TRUST UPON AND ORDERING THE SALE OF APPELLANT'S HOMESTEAD, ARE VOID AS A MATTER OF LAW.. . . . . . 37

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

# INDEX OF AUTHORITIES

**Statutes and Rules**:                                                    **Pages**

TEX. CONST. ART. XVI, § 50.. . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20, 21, 35, 38

TEX. PROP. CODE § 42.001. . . . . . . . . . . . . . . . . . . . . . . . . . 17

TEX. PROBATE CODE § 146(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . 30

TEX. PROBATE CODE § 147. . . . . . . . . . . . . . . . . . . . . . . . . 31, 39

**Cases**:                                                                 **Pages**

*Allen v. Ramey*, 226 S.W. 489
(Tex. Civ. App.—Texarkana 1920, no writ). . . . . . . . . . . . . . . . . . . 23, 28, 38

Baker Botts, L.L.P. v. Cailloux, 224 S.W.3d 723
(Tex. App.—San Antonio 2007, pet. denied). . . . . . . . . . . . . . 26, 27, 29, 38, 39

Baucom v. Texam Oil Corp., 423 S.W.2d 434
(Tex. Civ. App–El Paso 1967, writ ref'd n.r.e.). . . . . . . . . . . . . . . . 26, 27, 29

Bransom v. Standard Hardware, 874 S.W.2d 919
(Tex.App.-Fort Worth 1994, writ denied). . . . . . . . . . . . . . . . . . . . 27, 29

Brightwell v. Barlow, Gardner, Tucker & Garsek, 619 S.W.2d 249
(Tex. Civ. App.—Fort Worth 1981, no writ). . . . . . . . . . . . . . . . . 31, 32, 39

Burke v. Satterfield, 525 S.W.2d 950, 953 (Tex. 1975). . . . . . . . . . . . . . 32, 39

Cline v. Henry, 239 S.W.2d 205
(Tex.Civ.App.—Dallas 1951, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . 18, 36

Cline v. Niblo, 117 Tex. 474, 8 S.W.2d 633 (Tex. 1928).. 19, 21, 22, 23, 27, 28, 33

Crawford v. McDonald, 88 Tex. 626, 33 S.W. 325 (1895). . . . . . . . . 19, 22, 27, 28

Curtis Sharp Custom Homes, Inc. v. Glover, 701 S.W.2d 24, (Tex. App.—
Dallas 1985), writ refused NRE (Mar. 12, 1986). . . . . 18, 19-22, 27, 28, 30, 33, 38

Ex parte Fernandez, 645 S.W.2d 636 (Tex.App.-El Paso 1983, no writ.). . . . 25, 39

Franklin v. Woods, 598 S.W.2d 946
(Tex. Civ. App.—Corpus Christi 1980). . . . . . . . . . . . . . . . . . . . . . . . . 19, 22, 27, 38

Gann v. Montgomery, 210 S.W.2d 255
(Tex.Civ.App.—Fort Worth 1948, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . 17

Garrard v. Henderson, 209 S.W.2d 225 (Tex.Civ.App.—Dallas 1948, no writ). . 18

Gober v. Smith, 36 S.W. 910 (Tex. Civ. App. 1896, no writ). . . . . . . . . . . . . . . . 34

In re Byrom, No. 12-09-00278-CV, 316 S.W.3d 787
(Tex.App.-Tyler 2010, orig. proceeding [mand. denied] ). . . . . . . . . . . . . . 4, 5, 28

In re Estate of Byrom, 12-09-00279-CV, 2011 WL 590588
(Tex. App.—Tyler Feb. 16, 2011, pet. denied)(mem. op.). . . . . . . . . . . . 5, 6, 23, 39

In re Estate of Byrom, 12-12-00374-CV, 2013 WL 3967432
(Tex. App.—Tyler July 31, 2013), reh'g overruled (Oct. 9, 2013),
review denied (Jan. 31, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 24, 26, 28

In re Garza, 126 S.W.3d 268 (Tex.App.-San Antonio 2003,
orig. proceeding [mand. denied]). . . . . . . . . . . . . . . . . . . . . . 6, 23, 25, 28, 38, 39

In re Guardianship of Bayne, 171 S.W.3d 232,
(Tex. App.—Dallas 2005, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 39

In re Marriage of Nolder, 48 S.W.3d 432
(Tex.App.-Texarkana 2001, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 38

KCM Fin. LLC v. Bradshaw, 13-0199, 2015 WL 1029652
(Tex. Mar. 6, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Kendall Builders, Inc. v. Chesson, 149 S.W.3d 796
(Tex. App.—Austin 2004, pet. denied).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Kleine v. United States, 539 F.2d 427, 432 (5th Cir. 1976).. . . . . . . . . . . . . . . 31

Kostelnik v. Roberts, 680 S.W.2d 532 (Tex. App.—Corpus Christi 1984),
writ refused NRE (Jan. 16, 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 38

Landram v. Robertson, 195 S.W.2d 170
(Tex. Civ. App.—San Antonio 1946), writ refused NRE.. . . . . . . . . . . . . . . . . 36

Lifemark Corp. v. Merritt, 655 S.W.2d 310, 314 (Tex. App.—Houston [14th Dist.]
1983), writ refused NRE (Oct. 5, 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Meadows v. Bierschwale, 516 S.W.2d 125, 128 (Tex.1974). . . . . . . . . . . . . . . 28, 38

Mohseni v. Hartman, 363 S.W.3d 652
(Tex. App.—Houston [1st Dist.] 2011, no pet.). . . . . . . . . . . . . . . . . . . . . 29, 31, 39

Parker v. Schrimsher, 172 S.W. 165
(Tex. Civ. App.—Amarillo 1914), writ refused (Nov. 17, 1915).. . . . . . . . . . . . . 34

Rankin v. Naftalis, 557 S.W.2d 940 (Tex. 1977). . . . . . . . . . . . . . . . . . . . . . . 29, 38

Rowland v. Moore, 141 Tex. 469, 174 S.W.2d 248 (1943). . . . . . . . . . . . 30, 31, 39

U.S. v. Rodgers, U.S.Tex.1983, 103 S.Ct. 2132, 461 U.S. 677,
76 L.Ed.2d 236, on remand 712 F.2d 990.. . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Villarreal v. Laredo National Bank, 677 S.W.2d 600
(Tex.App.—San Antonio 1984, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . 34

Woods v. Alvarado State Bank, 118 Tex. 586, 19 S.W.2d 35 (1929). . . . . . . . . . 17

Yarboro v. Brewster, 38 Tex. 397 (1873). . . . . . . . . . . . . . . . . . . 19, 22, 27, 28

Zable v. Henry, 649 S.W.2d 136 (Tex. App.—Dallas 1983, no writ). . . . . . . . . . 34

## CASE NO. 12-15-00033-CV

IN THE COURT OF APPEALS FOR THE
TWELFTH APPELLATE DISTRICT OF TEXAS
AT TYLER, TEXAS

DIRECT APPEAL FROM

**JERRY BYROM, DIMPLE BYROM, and DOROTHY BERRY,
APPELLANTS**
**VS.**
**JILL CAMPBELL PENN as COURT APPOINTED RECEIVER, APPELLEE**

THE 4th JUDICIAL DISTRICT COURT OF RUSK COUNTY, TEXAS

CAUSE NO. 2013-18

COLLATERAL APPEAL FROM

IN THE ESTATE OF RUBY RENEE BYROM, DECEASED

IN THE COUNTY COURT AT LAW OF CHEROKEE COUNTY, TEXAS

CAUSE NO. 10745

## BRIEF OF APPELLANTS

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Jerry Byrom, Dimple Byrom, and Dorothy Berry, Appellants

herein, and respectfully file this brief.

-1-

## STATEMENT OF THE CASE

This case originated as a claim against the Estate of Ruby Renee Byrom, deceased, for attorney's fees and other fees incurred in Denton County, Texas, by Roy Anderson ("Anderson"), the temporary guardian of Mrs. Byrom's estate. (CR 10-12) These claims were denied by Jerry Byrom ("Byrom"), independent executor and sole heir of Ruby Byrom's estate. (CR 4-9) Following Byrom's removal as executor, the trial court ordered Byrom to pay certain sums of money into the registry of the court. (Id.) When Byrom failed to comply with the trial court's orders, the trial court imposed a constructive trust upon Byrom's real property in Mt. Enterprise, Texas, and ordered the property to be sold. (CR 10-16) The real property subject to the order of sale is Appellant Jerry and Dimple Byrom's homestead. (Exhibit G; Exhibit H)

Following unsuccessful prior appeals by Bryom, Appellee, Jill Campbell Penn ("Penn"), was appointed as receiver to effectuate the partition and sale of the Byrom's real property. Penn filed an Original Petition for Partition on January 17, 2013 in the 4th District Court of Rusk County, Texas. (CR 4-9) Appellants directly appeal the Decree Ordering Sale of Real Property signed and filed by the trial court on November 14, 2014 (CR 141-43; Exhibit A), and collaterally attacks the prior judgments of the Cherokee County Court in Cause No. 10745, (CR 10-16, Exhibit E, Exhibit F) as unconstitutional and void in regards to Appellants' homestead.

# ISSUES PRESENTED

1. ISSUE 1: THE DECREE ORDERING SALE OF REAL PROPERTY (APPELLANTS' HOMESTEAD), AND UNDERLYING ORDERS IMPRESSING A CONSTRUCTIVE TRUST UPON THE APPELLANT'S HOMESTEAD OR COMPELLING THE FORCED SALE OF APPELLANTS' HOMESTEAD, ARE VOID AS A MATTER OF LAW.

2. ISSUE 2: THE ORDER TO PAY ATTORNEY FEES CONTAINED IN THE DECREE ORDERING SALE OF REAL PROPERTY AND UNDERLYING ORDERS IMPRESSING A CONSTRUCTIVE TRUST UPON AND ORDERING THE SALE OF APPELLANT'S HOMESTEAD, ARE VOID AS A MATTER OF LAW.

**I. PROCEDURAL AND FACTUAL HISTORY– THE CONSTRUCTIVE TRUST AND ORDER OF SALE OF THE APPELLANT'S HOMESTEAD:**

A proper grounding for this appeal– which includes a direct appeal of the Decree Ordering Sale of Real Property, issued by the Rusk County District Court in 2014, as well as a collateral attack upon the prior orders of the County Court of Law of Cherokee County relating to the forced sale of Appellants' homestead, requires a review of the procedural and factual history relating to the Appellant's homestead claims. In the interest of judicial economy, and in the interest of highlighting that the relevant issues to this appeal are legal in nature, Appellants requests this Honorable Court take judicial notice of the factual and procedural history of this case as set forth in the prior appellate records and opinions relating to the instant matter, including:

**A.**  ***In re Byrom*, No. 12-09-00278-CV, 316 S.W.3d 787 (Tex.App.–Tyler 2010, orig. proceeding [mand. denied]).**[1]

This cause was Jerry Byrom's application for habeas corpus following his imprisonment by contempt for failure to pay debts owed to creditors of his mother's estate. *In re Byrom*, 316 S.W.3d 787 (Tex.App.-Tyler 2010, orig. proceeding [mand. denied] ). A thorough recitation of the procedural history of the case leading up to

---

[1] See Appendix, Exhibit B, for opinion.

Bryom's imprisonment for contempt is included in the opinion. *Id.* at 788-790. The trial court's order imprisoning Byrom for contempt was reversed and Byrom's petition for *habeas corpus* was granted. *Id.* at 795. Issues raised concerning the attorney fees and constructive trust awarded by the Cherokee County Court were not decided in this opinion. *Id.*; *See In re Estate of Byrom*, 12-09-00279-CV, 2011 WL 590588 (Tex. App.—Tyler Feb. 16, 2011, *pet. denied*).

Notably, in distinguishing Byrom's confinement for refusal to pay the court-ordered debt to the creditors of his mother's estate from the cases cited by the appellee therein, this Honorable Court stated:

> "And even if fiduciary duty had been the basis for the court's holding in those cases, we have been unable to located any Texas case holding that an independent executor has a fiduciary relationship with estate creditors." *Id.* at 794-95.

**B.** ***In re Estate of Byrom*, 12-09-00279-CV, 2011 WL 590588 (Tex. App.—Tyler Feb. 16, 2011, pet. denied)(mem. op.)**[2]

Byrom filed an appeal raising multiple issues following the entry of the Nunc Pro Tunc Order on Motion for Constructive Trust by the County Court at Law of Cherokee County in Cause No. 10745 on or about November 16, 2009. *See* CR 10-16 for exhibited copy of the Order. Once again, the procedural history of the underlying case leading up to Byrom's illegal imprisonment and imposition of the constructive

---

[2] See Appendix, Exhibit C, for decision.

trust were discussed at length. *In re Estate of Byrom*, 12-09-00279-CV, 2011 WL

590588, *1 (Tex. App.—Tyler Feb. 16, 2011, pet. denied) (mem. op.). The issues of

attorney fees and constructive trust, *inter alia*, were considered in this appeal, and the

trial court was reversed in part, affirmed in part. *Id.* at *7. In regards to the imposition

of the constructive trust, this Honorable Court held, without considering the associated

constitutional homestead claim because it was not briefed in compliance with

TEX.R.APP. P. 38.1(I), that because Byrom had a statutory duty to pay claims against

his mother's estate, "the probate court was authorized by statute to award Anderson

and Coker attorney's fees incurred in connection with the constructive trust." *Id.* at

*4, *6.

Notably, in discussing Byrom's release from illegal imprisonment upon his

habeas petition, this Honorable Court explained:

> "We granted Byrom's petition for writ of habeas corpus... because we
> determined that the contempt order violated the constitutional
> prohibition against imprisonment for debt and therefore, was void. A
> void order has no force of effect and confers no rights; it is a mere
> nullity. *In re Garza*, 126 S.W.3d 268, 271 (Tex.App.-San Antonio
> 2003, orig. proceeding [mand. denied]). Any attorney fees based upon
> a void order must also be void. *Ex parte Fernandez*, 645 S.W.2d 636,
> 639 (Tex.App.-El Paso 1983, no writ.)" *Id.* at *4

**C.** ***In re Estate of Byrom***, **12-12-00374-CV, 2013 WL 3967432 (Tex. App.—Tyler July 31, 2013), reh'g overruled (Oct. 9, 2013), review denied (Jan. 31, 2014).[3]**

The issue of the constructive trust and forced sale of the Byroms' homestead was the subject of a further appeal. *In re Estate of Byrom*, 12-12-00374-CV, 2013 WL 3967432 (Tex. App.—Tyler July 31, 2013), reh'g overruled (Oct. 9, 2013), review denied (Jan. 31, 2014). Therein, this Honorable Court again affirmed the trial court; this time on the ground of *res judicata*, holding:

> "Byrom contends that the trial court erred in imposing a constructive trust on property he claims as homestead and in ordering the sale of that property. Byrom raised these same issues in the prior proceeding between the same parties and arising out of the same facts. This court ruled adversely to Appellant on both claims. See In re Estate of Byrom, 2011 WL 590588, at * 7. Therefore, the doctrine of res judicata bars the relitigation of Byrom's claims. *Id.* at *6-7.

In addition to declaring the prior litigation a bar to relief upon Byrom's constitutional homestead claims, this Honorable Court appears to have determined that any error resulting from imposition of the constructive trust upon Byrom's homestead, from a constitutional perspective, would be harmless, as:

> "It has long been decided that [the] homestead and exemption laws of this State were never intended to be, and cannot be, the haven of wrongfully obtained money or properties." *Baucom v. Texam Oil Corp.*, 423 S.W.2d 434, 442 (Tex. Civ. App–El Paso 1967, writ ref'd n.r.e.). "[T]he homestead protection afforded by the Texas Constitution was

---

[3] See Appendix, Exhibit D, for decision.

never intended to protect stolen funds. *Bransom v. Standard Hardware*, 874 S.W.2d 919, 928 (Tex.App.-Fort Worth 1994, writ denied)." *Id.* at *1.

As a conclusion to the harm analysis, this Honorable Court looked into the factual record of the proceedings and determined:

> "Byrom wrongfully used the estate's money to construct the home he now claims as homestead. The homestead law does not protect property or funds obtained with money misappropriated by a fiduciary. *See Baucom*, 423 S.W.2d at 442; *Bransom*, 874 S.W.2d at 928." *Id.* at *2.

## II. PROCEDURAL AND FACTUAL HISTORY OF THE RUSK COUNTY DISTRICT COURT'S DECREE ORDERING OF SALE OF REAL PROPERTY

### A. Receiver's Authority to Act

Appellee, Jill Campbell Penn, was appointed as Receiver by the County Court at Law of Cherokee County pursuant to a First Amended Nunc Pro Tunc Order for Sale of Real Property and for Appointment of Receiver ("Cherokee County Order for Sale"), signed and filed on May 13, 2013. *See* page 40-42 of Cherokee County Clerk's Record submitted to Court of Appeal on June 14, 2013; *See also* Appendix, Exhibit E. The Cherokee County Order for Sale was authorized by the Nunc Pro Tunc Order on Motion for Constructive Trust ("Order for Constructive Trust") signed on November 16, 2009, and filed by the Cherokee County Court at Law on November 17, 2009. *See* CR 10-16; *See also* Appendix, Exhibit F.

-8-

Pursuant to the Cherokee County Order of Sale, the real property of Jerry Byrom (*not including the real property interests of Appellants Dimple Byrom and Dorothy Berry*), located at 17441 County Road 3226 South, Mount Enterprise, Texas was encumbered by a constructive trust in the amount of Two Hundred Thousand Dollars ($200,000.00) for the benefit of the Estate of Ruby Renee Byrom because of Byrom's "breach of his fiduciary duty to the estate of Ruby Renee Byrom." *Id.* The Order of Sale was entered following Byrom's failure to pay the sum of $200,000.00 into the Registry of the Court of Cherokee County, as ordered. *Id.*

**B.      Absence of Homestead Findings and Conclusions in Prior Orders**

Neither the Order for Constructive Trust, nor the subsequently filed Cherokee County Order for Sale, issued by the County Court at Law of Cherokee County, include findings and conclusions pertaining to Appellants' homestead interests or rights. *Id.*

**C.      Petition for Partition and Pretrial Proceedings**

Pursuant to the authority of the Cherokee County Order of Sale and for Appointment of Receiver– as amended by the County Court of Law of Cherokee County on May 13, 2013– Appellee filed an Original Petition for Partition in the 4th

District Court of Rusk County, Texas on January 17, 2013, under Cause No. 2013-18 with the caption "Estate of Ruby Renee Byrom, Deceased," against Jerry Byrom, Dimple Byrom, and Dorothy Berry. CR 4-16. As indicated on the Warranty Deed exhibited to the Petition for Partition, the owners of the "Real Property at Interest"– specifically the Second Tract described in the exhibited Warranty Deed, comprised of 76 acres and commonly known as 17441 County Road 3226 South, Mount Enterprise, Texas– are Jerry Byrom, his wife, Daisy "Dimple" Byrom, and Dorothy Berry. Jerry and Dimple Byrom owning an undivided 2/3 of the Real Property at Interest as community interest, and Dorothy Berry owning an undivided 1/3 of the Real Property at Interest. CR 7-8.

In answer to the Petition, Appellants asserted their homestead interest in the Real Property in Interest and Constitutional prohibition against encumbrance or forced sale of homestead property. CR 19-20.

On August 11, 2014, Dimple Byrom filed a verified Objection to the Partition and Sale of Homestead Property, asserting her unencumbered homestead rights in the Real Property at Interest. CR 134.

At a pretrial hearing held October 29, 2014, the trial court appointed Martha MacDougal as an independent appraisal to assist the court in determining whether Tract 2 of the Real Property in Interest was susceptible to partition. 3 RR 7; CR 117.

**D. The Trial**

The trial court heard Appellee's request for an order to approve the forced sale of the Appellants' real property on August 11, 2014. 4 RR 1. Appellants renewed their objection to any order of partition or sale of their homestead property. 4 RR 4. Appellee argued that the objection was moot because this Honorable Court had previously affirmed the order of sale on two occasions; thus reconsideration of the matter was barred by *res judicata*. 4 RR 4. The trial court apparently agreed and allowed the trial to commence without further consideration of the homestead issue. 4 RR 4.

**1. Testimony of Martha McDougal**[4]

Martha McDougal testified that the value of the Real Property in Interest– specifically the second tract of land, commonly described as 17441 South County Road 3226, Mount Enterprise, Texas– was between $332,000.00 and $379,000.00. 4 RR 5. McDougal subsequently testified that, although she did not write it down, she appraised the value of the house on the property at approximately $261,000-$262,000. She testified to having seen a contract for construction on the house dated April 5, 2006, with a contract price of $53,000 for the construction of the house. 4 RR 9-10.

---

[4] Martha McDougal's last name is spelled inconsistently throughout the pleadings and testimony on record. Appellants have elected to go with the Court Reporter's spelling.

McDougal stated that per the Appraisal District's tax rolls, construction on the house was completed in 2007. 4 RR 9. McDougal, though somewhat unclear as to whether she had been commissioned to make a determination on partition, stated that she did not believe the property could be readily partitioned in a manner which would provide $200,000.00 for payment into the Registry of the Cherokee County Court, while not impairing the ownership interests of Dimple Byrom and Dorothy Berry. 4 RR 11-12.

### 2. Testimony of Jerry Byrom

Jerry Byrom, appellant, testified that he currently resides at 17441 County Road 3226 South, in Mount Enterprise, Texas. 4 RR 14. Byrom stated that he owns the property in undivided interest with his wife, Dimple Byrom, and family friend, Dorothy Berry. 4 RR 14-15. Two of the Byrom's grandchildren live at the house, as well. 4 RR 16-17.

Byrom testified that the home in which he, his wife, and grandchildren live being on the 76 acre Second Tract, which is more commonly described as 17441 County Road 3226 South, in Mount Enterprise, Texas; a.k.a., the Real Property in Interest. 4 RR 19, 24-25.

Byrom acquired the land subject to the Cherokee County Order of Sale and Rusk County Decree Ordering Sale of Real Property beginning in 1986. 4 RR 27-30. All of the property was acquired in the names of Jerry Byrom, Dimple Byrom and

Dorothy Berry. 4 RR 31. Byrom testified that he started building the house on the second tract of that land before his inheritance from his mother's estate came in. 4 RR 21. Byrom stated he has no way to trace where the money for the construction of the house came from. 4 RR 22.

### 3. *Testimony of Dorothy Berry*:

Dorothy Berry testified that she is a one-third owner of the Real Property in Interest, but does not presently live there, and has never lived there. 4 RR 32-34.

### 4. *Testimony of Daisy (Dimple) Byrom:*

Mrs. Byrom testified that she is a co-owner of and lives at the Real Property in Interest– 17441 County Road 3226 South, Mount Enterprise, Texas– with her husband and two of her grandchildren. 4 RR 35-36.

### E. The Decree Ordering Sale of Property

Following the hearing, the Rusk County District Court signed and filed the Decree Ordering Sale of Property ("Rusk County Decree Ordering Sale") on November 14, 2014. CR 141-43; Exhibit A. In part, the Order states as follows:

1. "Jerry Byrom, Dimple Byrom and Dorothy Berry are the sole owners of the real property more fully described on Exhibit A..., more commonly

known as 17441 County Road 3226 South, Mount Enterprise, Texas, specifically the Second Tract described thereon (the "Real Property")."

2. "Jerry Byrom owns an undivided 1/3 interest in the Real Property"

3. "Dimple Byrom owns an undivided 1/3 interest in the Real Property"

4. "Dorothy Berry owns an undivided 1/3 interest in the Real Property"

5. "The Real Property is not susceptible to fair and equitable partition in kind because to do so would hinder the value of the property and cause substantial economic loss such that the entire amount to be placed in the registry of the Court could not be so placed. Accordingly, the Real Property must be sold per the previous order of the Cherokee County Court at Law, affirmed by the Tyler Court of Appeals."

6. "IT IS ORDERED THAT Jill Campbell Penn, is appointed Receiver by this Court, to the extent such an appointment is necessary, to conduct the sale of the entire Real Property."

The Decree further provides that Appellee is to pay herself a $9,000.00 payment for payment of her fees and costs of court from the proceeds of the sale. Id.

Appellants filed an objection to the proposed Rusk County Decree Ordering Sale of Property on November 7, 2014, asserting, *inter alia*, that the order was deficient in failing to include requisite findings of fact and conclusions of law relative

to the Appellants' homestead interest and rights.  CR 138-39.  The trial court signed the proposed Decree without amendment.

Appellants filed a Motion for New Trial on December 9, 2014.  CR 144-49.

Appellants filed their Notice of Appeal on February 10, 2015. CR 150-51.

**F.     Absence of Homestead findings and conclusions in the Decree Ordering Sale**

The Decree Ordering Sale of the Appellants' real property– to-wit: the homestead– contained no findings or conclusions regarding the homestead status of Appellants' real property, or the applicability of Constitutional exceptions permitting the forced sale of Appellant's homestead to satisfy Mr. Byrom's debt to the creditors of his mother's estate.

**II.     APPELLANT'S HOMESTEAD INTEREST IN THE REAL PROPERTY SUBJECT TO THE DECREE ORDERING SALE**

Appellants Jerry Byrom and Daisy "Dimple" Byrom were married on July 26, 1971.  Affidavit of Daisy "Dimple" Byrom, *See Appendix*, Exhibit G; Affidavit of Jerry Byrom, *See Appendix*, Exhibit H.  On or about March of 2006, Appellants Jerry and Dimple Byrom constructed a home upon the land they acquired in 1986– the real property which is subject to the Cherokee County Order of Sale and Rusk County Decree Ordering Sale. *Id.*  The Byroms have lived on the real property since 2006 and continue to reside there with two of their grandchildren. *Id.*

## SUMMARY OF THE ARGUMENT

This is the fourth appeal before this Honorable Court related to Appellant Jerry Byrom's handling of his deceased mother's estate. It encompasses a direct appeal of the Decree Ordering Sale of Real Property, entered by the Rusk County District Court, and a collateral attack upon the previously appealed orders of the Cherokee County Court at Law. The central issue raised on this appeal is whether the Cherokee County Court at Law had the subject matter jurisdiction or constitutional authority to enter the orders imposing a constructive trust upon Appellants' homestead and appointing a receiver to compel the sale of that homestead. Appellants contend that the County Court at Law of Cherokee County lacked the jurisdiction and exceeded its constitutional authority in entering the orders for constructive trust and forced sale of Appellants' homestead in violation of Texas Constitution Article XVI, § 50.

As the Cherokee County Court at Law orders were beyond the jurisdiction and constitutional authority of the court to enter, said orders, and all subsequent orders based thereon– including the Decree Ordering Sale of Real Property entered by the Rusk County District Court– are void and of no effect. As this Honorable Court has stated, "A void order has no force of effect and confers no rights; it is a mere nullity." *In re Estate of Byrom*, 2011 WL 590588 at *4 (*citing In re Garza*, 126 S.W.3d 268, 271 (Tex.App.-San Antonio 2003, orig. proceeding [mand. denied])

-16-

# ARGUMENT AND AUTHORITIES

ISSUE 1: THE DECREE ORDERING SALE OF REAL PROPERTY (APPELLANTS' HOMESTEAD), AND UNDERLYING ORDERS IMPRESSING A CONSTRUCTIVE TRUST UPON THE APPELLANT'S HOMESTEAD OR COMPELLING THE FORCED SALE OF APPELLANTS' HOMESTEAD, ARE VOID AS A MATTER OF LAW.

## A. THE NATURE OF THE HOMESTEAD RIGHT AND PROTECTION IN TEXAS

The Texas Constitution provides that the homestead of a family or single adult is protected from forced sale for purposes of paying debts and judgments except in specifically enumerated cases. TEX. CONST. art. XVI, § 50; *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 806-07 (Tex. App.—Austin 2004, pet. denied). This protection is historically favored and liberally construed to preserve the homestead in order to protect citizens from losing their homes. *Lifemark Corp. v. Merritt*, 655 S.W.2d 310, 314 (Tex. App.—Houston [14th Dist.] 1983), writ refused NRE (Oct. 5, 1983)(*quoting Woods v. Alvarado State Bank*, 118 Tex. 586, 19 S.W.2d 35, 35 (1929).

A homestead is the dwelling house constituting the family residence, together with the land on which it is situated and the appurtenances connected therewith. *Gann v. Montgomery*, 210 S.W.2d 255, 258 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n.r.e.). The possession and use of real estate by one who owns it, and who, with his family, resides upon it makes it the homestead of the family in law and in fact.

*Garrard v. Henderson*, 209 S.W.2d 225, 230 (Tex.Civ.App.—Dallas 1948, no writ).

The affidavits and testimony of Appellants Jerry and Dimple Byrom establish that the real property subject to the Cherokee County Order of Sale and subsequent Decree Ordering Sale of the Rusk County District Court– to-wit: the real property more fully described on Exhibit A to the Decree Ordering Sale, specifically the Second Tract described thereon, located upon 76 acres, and more commonly known as 17441 County Road 3226 South, Mount Enterprise, Texas– is their homestead. The Byroms have owned the 120 acres of which the subject real property is a part since 1986. In March 2006, the Byroms constructed a home upon the Real Property in Interest, with the intention to reside thereupon, and have continuously resided thereupon as husband and wife, at times and presently with their grandchildren, since 2006. (Exh. G, Exh. H) The Byroms began construction of the home upon the Real Property in Interest began prior to the receipt by Jerry Byrom of any funds from his mother's estate. (Id.)

The forced sale of a homestead to satisfy any debt, except as provided by the Texas Constitution, is void. *Curtis Sharp Custom Homes, Inc. v. Glover*, 701 S.W.2d 24, 25 (Tex. App.—Dallas 1985), writ refused NRE (Mar. 12, 1986) *(citing Cline v. Henry*, 239 S.W.2d 205, 208 (Tex.Civ.App.—Dallas 1951, writ ref'd n.r.e.))

**B.** **A VOID ORDER COMPELLING THE FORCED SALE OF A HOMESTEAD IS SUBJECT TO COLLATERAL ATTACK.**

In the watershed case of *Cline v. Niblo*, the Texas Supreme Court declared that when the record fails to show that the homestead status of real property, and the applicability of constitutional exceptions permitting forced sale of homestead property, are affirmatively adjudicated by the trial court, the court lacks subject matter jurisdiction to compel the forced sale of a homestead. *Cline v. Niblo*, 117 Tex. 474, 485, 8 S.W.2d 633, 638-39 (Tex. 1928). As such, any order compelling the sale of a homestead in which homestead status and the applicability of constitutional exceptions permitting the forced sale of the homestead have not been adjudicated, is void and subject to collateral attack at any time. *Id.*; *Franklin v. Woods*, 598 S.W.2d 946, 950 (Tex. Civ. App.—Corpus Christi 1980). The rule announced in *Cline* is a consistent and logical extension of the long-standing general rule that orders made beyond the jurisdictional power of the issuing court is void. *Yarboro v. Brewster*, 38 Tex. 397, 405-06 (1873); *Crawford v. McDonald*, 88 Tex. 626, 631, 33 S.W. 325, 328 (1895). Because the Constitutional protection of homesteads outlined in *Cline* is jurisdictional, an appellate court has the power to collaterally review an invalid equitable lien imposed upon a homestead and declare it unenforceable. *Curtis Sharp Custom*

*Homes, Inc. v. Glover*, 701 S.W.2d 24, 27-28 (Tex. App.—Dallas 1985), writ refused NRE (Mar. 12, 1986).

In analyzing the immediately appealable order– to-wit: the Decree Ordering Sale of Real Property, issued by the 4th District Court of Rusk County, Texas on November 14, 2014– there is no affirmative adjudication as to the question of whether the real property ordered sold is the homestead of Appellants, nor an affirmative adjudication as to whether an enumerated exception contained in TEX. CONST. art. XVI, § 50 authorizes the forced sale of the Appellants' homestead. (CR 141-143; Exh. A)  Moreover, the underlying orders upon which the Decree Ordering Sale is authorized– to-wit: the First Amended Nunc Pro Tunc Order for Sale of Real Property and for Appointment of Receiver ("Cherokee County Order for Sale"), filed by the Cherokee County Court at Law on May 13, 2013, and the preceding Nunc Pro Tunc Order on Motion for Constructive Trust ("Order for Constructive Trust") filed by the Cherokee County Court at Law on November 17, 2009– also failed to address or adjudicate the homestead interests of the Appellants in the real property upon which the constructive trust was impressed and the order for sale authorized.  *See* Appendix, Exhibit E; See CR 10-16; Appendix, Exhibit F.

The curious fact underlying this appeal, and previous appeals of the rulings of the Cherokee County Court at Law, is that, despite the Appellants' numerous efforts

to assert their homestead rights in the Real Property in Interest, there has never been an order affirmatively adjudicating their homestead rights in the Real Property in Interest, nor an affirmative finding that Appellants' homestead property is subject to forced sale by one of the enumerated exceptions of TEX. CONST. art. XVI, § 50. Absent these affirmative adjudications, the Decree Ordering Sale of Real Property, issued by the 4th District Court of Rusk County, Texas, and the preceding Cherokee County Order of Sale and Order for Constructive Trust were entered without subject matter jurisdiction and therefore void. *Cline v. Niblo*, 117 Tex. 474, 485, 8 S.W.2d 633, 638-39 (Tex. 1928); *Curtis Sharp Custom Homes, Inc. v. Glover*, 701 S.W.2d 24, 27-28 (Tex. App.—Dallas 1985), writ refused NRE (Mar. 12, 1986).

### 1. THE RES JUDICATA ARGUMENT

Appellee argued– successfully, if the failure of the 4th District Court of Rusk County to address the Appellants' homestead objections at trial is any indication– that Appellants' homestead objections were without merit as they were already the subject of two appeals to this Honorable Court and barred by *res judicata*. While Appellee's argument was true and correct in that Appellant Jerry Byrom has twice before attempted to assert and protect his homestead rights in the Real Property in Interest, and twice been denied, most recently on the grounds of *res judicata*, Appellants respectfully, and with due regard for this Honorable Court's prior decisions, raise three

counterpoints: 1) a void order cannot supply grounds for *res judicata*, 2) the harmless error analysis previously employed by this Honorable Court is not a substitute for constitutional compliance and does not retroactively imbue the trial court with jurisdiction to enter a void order, and 3) this is the first time Appellant Dimple Byrom's homestead rights have been properly attached by a trial court order and placed before this Court.

While aware of the tenuous ground they walk in doing so, in order to avoid the greater injustice which would occur were the unconstitutional forced sale of their homestead allowed to proceed, it is necessary to ask this Honorable Court to review and reconsider its prior decisions in light of the trial courts' lack of subject matter jurisdiction over their homestead. In so doing, Appellants acknowledge their part in failing to properly present the issue previously. Fortunately, however, appeal of the Decree Ordering Sale is timely, and there is no bar to collateral attack upon the prior orders of the Cherokee County Court at Law if its orders are void. *See Cline v. Niblo*, 117 Tex. 474, 485, 8 S.W.2d 633, 638-39 (Tex. 1928); *Franklin v. Woods*, 598 S.W.2d 946, 950 (Tex. Civ. App.—Corpus Christi 1980); *Yarboro v. Brewster*, 38 Tex. 397, 405-06 (1873); *Crawford v. McDonald*, 88 Tex. 626, 631, 33 S.W. 325, 328 (1895); *Curtis Sharp Custom Homes, Inc. v. Glover*, 701 S.W.2d 24, 27-28 (Tex. App.—Dallas 1985), writ refused NRE (Mar. 12, 1986).

Pursuant to the authority of *Cline v. Niblo*, a void judgment ordering the sale of a homestead, premised upon error not apparent in the record because the homestead issues have not been affirmatively adjudicated, may be corrected upon collateral attack by a showing of the true facts at any time. *Cline v. Niblo*, 117 Tex. 474, 484 85, 8 S.W.2d 633, 637-38 (1928). The true facts of Appellants' homestead claim, being presented for the consideration of the 4th District Court of Rusk County and upon testimony and affidavits presented herewith, are sufficient to demonstrate that the immediately appealed Decree Ordering Sale, and its predecessor orders from the Cherokee County Court at Law, are void in fact and in law.

> "Interpreting and applying these sections of the Constitution and various statutes, our courts have consistently held that probate or other judicial sales of exempt homestead property, in the absence of an affirmative showing in the decree that the question was adjudicated in the judgment leading up to the sale, may be inquired into and declared a nullity in collateral proceedings." *Cline v. Niblo*, 117 Tex. 474, 481, 8 S.W.2d 633, 636 (Tex. 1928).

As this Honorable Court has stated, "A void order has no force of effect and confers no rights; it is a mere nullity." *In re Estate of Byrom*, 2011 WL 590588 at *4 (*citing In re Garza*, 126 S.W.3d 268, 271 (Tex.App.-San Antonio 2003, orig. proceeding [mand. denied]); *See also Allen v. Ramey*, 226 S.W. 489, 491 (Tex. Civ. App.—Texarkana 1920, no writ) (Void order compelling sale of real property is always subject to collateral attack.)

**A)** **Analysis of *In re Byrom*, No. 12-09-00278-CV, 316 S.W.3d 787 (Tex.App.–Tyler 2010, orig. proceeding [mand. denied]).**[5]

This cause was Jerry Byrom's successful application for habeas corpus following his imprisonment by contempt for failure to pay the creditors of his mother's estate. While not immediately applicable to the issues raised in the instant appeal– as they were addressed in subsequent opinions– the opinion is notable herein because this Honorable Court stated as follows:

> "And even if fiduciary duty had been the basis for the court's holding in those cases, we have been unable to located any Texas case holding that an independent executor has a fiduciary relationship with estate creditors." *Id.* at 794-95.

Upon conducting their own review of Texas and some national decisions, using multiple boolean search strings in Westlaw, Appellants state that no case has been located in which an independent executor was found to owe or to have violated a fiduciary duty to estate creditors. This finding is significant in light of this Honorable Court's decision in *In re Estate of Byrom*, 12-12-00374-CV, 2013 WL 3967432 (Tex. App.—Tyler July 31, 2013), reh'g overruled (Oct. 9, 2013), review denied (Jan. 31, 2014), and will be discussed below.

---

[5] See Appendix, Exhibit B, for opinion.

**B)** **Analysis of *In re Estate of Byrom*, 12-09-00279-CV, 2011 WL 590588 (Tex. App.—Tyler Feb. 16, 2011, pet. denied)(mem. op.)**[6]

This appeal by Appellant Jerry Byrom, individually, was filed following the entry of the Nunc Pro Tunc Order on Motion for Constructive Trust by the County Court at Law of Cherokee County in Cause No. 10745, on or about November 16, 2009. Although many of the issues raised by Byrom– including the constitutionality of impressing a constructive upon Byrom's homestead, the forced sale of Byrom's homestead, and the imposition of various attorney fees by the Cherokee County Court at Law– were not considered because they were deemed not to have been briefed in compliance with Tex.R.App.P. 38.1(I), the findings of the Court in discussing Byrom's release from illegal imprisonment are significant to this appeal:

> "We granted Byrom's petition for writ of habeas corpus... because we determined that the contempt order violated the constitutional prohibition against imprisonment for debt and therefore, was void. **A void order has no force of effect and confers no rights; it is a mere nullity. *In re Garza*, 126 S.W.3d 268, 271 (Tex.App.-San Antonio 2003, orig. proceeding [mand. denied]). Any attorney fees based upon a void order must also be void. *Ex parte Fernandez*, 645 S.W.2d 636, 639 (Tex.App.-El Paso 1983, no writ.)**" *Id.* at *4.

---

[6] See Appendix, Exhibit C, for decision.

-25-

C)    **Analysis of *In re Estate of Byrom*, 12-12-00374-CV, 2013 WL 3967432 (Tex. App.—Tyler July 31, 2013), reh'g overruled (Oct. 9, 2013), review denied (Jan. 31, 2014).[7]**

The issue of the constructive trust and forced sale of Appellant Jerry Byrom's homestead was the subject of a further appeal. *In re Estate of Byrom*, 12-12-00374-CV, 2013 WL 3967432 (Tex. App.—Tyler July 31, 2013), reh'g overruled (Oct. 9, 2013), review denied (Jan. 31, 2014). Therein, this Honorable Court again affirmed the County Court at Law of Cherokee County; this time on the ground of *res judicata*, holding:

> "Byrom contends that the trial court erred in imposing a constructive trust on property he claims as homestead and in ordering the sale of that property. Byrom raised these same issues in the prior proceeding between the same parties and arising out of the same facts. This court ruled adversely to Appellant on both claims. See In re Estate of Byrom, 2011 WL 590588, at * 7. Therefore, the doctrine of res judicata bars the relitigation of Byrom's claims. *Id.* at *6-7.

In addition to declaring the prior litigation a bar to relief upon Byrom's homestead claims, this Honorable Court appears to have determined that any error resulting from imposition of the constructive trust upon Byrom's homestead, from a constitutional perspective, would be harmless, as:

> "It has long been decided that [the] homestead and exemption laws of this State were never intended to be, and cannot be, the haven of wrongfully obtained money or properties." *Baucom v. Texam Oil Corp.*,

---

[7] See Appendix, Exhibit D, for decision.

423 S.W.2d 434, 442 (Tex. Civ. App–El Paso 1967, writ ref'd n.r.e.). "[T]he homestead protection afforded by the Texas Constitution was never intended to protect stolen funds. *Bransom v. Standard Hardware*, 874 S.W.2d 919, 928 (Tex.App.-Fort Worth 1994, writ denied)." *Id.* at *1.

As a conclusion to the harm analysis, this Honorable Court looked into the factual record of the proceedings and determined:

"Byrom wrongfully used the estate's money to construct the home he now claims as homestead. The homestead law does not protect property or funds obtained with money misappropriated by a fiduciary. *See Baucom*, 423 S.W.2d at 442; *Bransom*, 874 S.W.2d at 928." *Id.* at *2

### D)    Argument and Authorities

These prior appellate decisions are contingent upon the jurisdiction of the trial court to enter the orders affirmed by this Honorable Court.  If, as suggested above, the County Court at Law of Cherokee lacked subject matter jurisdiction over Jerry Bryom's homestead because his homestead rights were not affirmatively adjudicated, then the doctrine of *res judicata* cannot and should not apply to shield such orders from constitutional scrutiny.  *See Cline v. Niblo*, 117 Tex. 474, 485, 8 S.W.2d 633, 638-39 (Tex. 1928);   *Franklin v. Woods*, 598 S.W.2d 946, 950 (Tex. Civ. App.—Corpus Christi 1980);   *Yarboro v. Brewster*, 38 Tex. 397, 405-06 (1873); *Crawford v. McDonald*, 88 Tex. 626, 631, 33 S.W. 325, 328 (1895);   *Curtis Sharp Custom Homes, Inc. v. Glover*, 701 S.W.2d 24, 27-28 (Tex. App.—Dallas 1985), writ

refused NRE (Mar. 12, 1986); *In re Garza*, 126 S.W.3d 268, 271 (Tex.App.-San Antonio 2003, orig. proceeding [mand. denied]); *Allen v. Ramey*, 226 S.W. 489, 491 (Tex. Civ. App.—Texarkana 1920, no writ).

To say that Appellants' must yield to the unconstitutional forced sale of their homestead because there is evidence in the record to support the proposition that Jerry Byrom, individually, invested wrongfully obtained funds in the homestead, as this Honorable Court ruled in *In re Estate of Byrom*, 12-12-00374-CV, 2013 WL 3967432 (Tex. App.—Tyler July 31, 2013), reh'g overruled (Oct. 9, 2013), review denied (Jan. 31, 2014), is incorrect for multiple reasons.

Firstly, as acknowledged by this Honorable Court in *In re Byrom*, No. 12-09-00278-CV, 316 S.W.3d 787 (Tex.App.–Tyler 2010, orig. proceeding [mand. denied]), an independent executor– which is what Jerry Byrom was as the time he allegedly wrongfully procured funds from his mother's estate– has never been held to owe a fiduciary or special duty to the creditors of a decedent's estate. In the absence of a special, confidential relationship or established fiduciary relationship, there is no basis and no authority for the imposition of a constructive trust. *Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex.1974); *In re Marriage of Nolder*, 48 S.W.3d 432, 434 (Tex.App.-Texarkana 2001, pet. denied); *Kostelnik v. Roberts*, 680 S.W.2d 532, 534 (Tex. App.—Corpus Christi 1984), writ refused NRE (Jan. 16, 1985). Moreover, strict

-28-

proof of a prior confidential relationship and unfair conduct are required to authorize the imposition of a constructive trust. *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex. 1977); *Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 736 (Tex. App.—San Antonio 2007, pet. denied).

No such proof was offered or found in the underlying Cherokee County Court at Law case. The constructive trust was based upon Jerry Byrom alleged breach of "fiduciary duty" without any lawful justification to support the conclusion that Jerry Byrom was a fiduciary. *See* CR 10-16; Appendix, Exhibit F. Not only was there no authority to sustain the proposition that Jerry Byrom was a fiduciary, to the contrary, it has been affirmatively held that,

> "[A]n independent executor does not hold the estate property in trust for the benefit of the estate creditors and therefore does not owe them a fiduciary duty absent any specific undertaking to manage the creditor's interests in the case of a bankrupt estate." *Mohseni v. Hartman*, 363 S.W.3d 652, 658 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

This Honorable Court's prior comparison of Jerry Byrom's conduct to the conduct of the litigants in *Baucom v. Texam Oil Corp.*, 423 S.W.2d 434, 442 (Tex. Civ. App–El Paso 1967, writ ref'd n.r.e.) and *Bransom v. Standard Hardware*, 874 S.W.2d 919, 928 (Tex.App.-Fort Worth 1994, writ denied) is therefore misplaced. In both *Baucom* and *Bransom*, the parties whom wrongfully invested illegally obtained funds in the construction or improvement of their homesteads– which authorized the

imposition of a constructive trust upon their homesteads– were corporate fiduciaries who owed a clear, previously existing fiduciary duties to their employers from whom they stole funds. *Id.*; *Cf. Curtis Sharp Custom Homes, Inc. v. Glover*, 701 S.W.2d 24, 27-28 (Tex. App.—Dallas 1985), writ refused NRE (Mar. 12, 1986) (Imposition of constructive trust and forced sale of homestead based upon investment of wrongfully obtained funds by corporate fiduciary held unconstitutional and void.). No such duty was owed by Byrom to the creditors of his mother's estate.

Secondarily, viewed in the light of his authority as independent executor, the initial actions of Jerry Byrom in rejecting the claims of the creditors of his mother's estate were not wrongful. Under the Probate Code, effective at the time Jerry Byrom was independent executor of his mother's estate (and under the new Estates Code) an Independent Executor has the power to "approve, classify, and pay, or reject, claims against the estate." TEX. PROBATE CODE § 146(a)(3). "In general, an independent executor has the authority, without an order of the probate court, to do any act which an ordinary executor or administrator may do under such an order." *Rowland v. Moore*, 141 Tex. 469, 473-74, 174 S.W.2d 248, 250 (1943). Under Texas law, as long as an estate remains in hands of and under control of independent executor probate court lacks jurisdiction to consider and approve claims against estate. *Kleine v. United States*, 539 F.2d 427, 432 (5th Cir. 1976).

While Jerry Byrom's subsequent failure to comply with the order of the Cherokee County Court at Law to pay the claims made against his mother's estate was not ideal conduct for an independent executor, based upon the absence of fiduciary duty and the statutory authority invested in him as independent executor, it cannot be said that Byrom came to possess the funds from his mother's estate in a manner that was "wrongful." Furthermore, in mitigation of the perceived wrong-doing by Jerry Byrom in failing to comply with the orders of the Cherokee County Court at Law, it appears that these estate creditors sued upon their claim in the name of the estate and brought their claim directly in the probate court; actions which were contrary to the procedure for pursuing recovery upon claims rejected by an independent executor at the time. *See* TEX. PROBATE CODE § 147; *Rowland v. Moore*, 141 Tex. 469, 474, 174 S.W.2d 248, 250 (1943); *Brightwell v. Barlow, Gardner, Tucker & Garsek*, 619 S.W.2d 249, 254 (Tex. Civ. App.—Fort Worth 1981, no writ); *In re Guardianship of Bayne*, 171 S.W.3d 232, 237-38 (Tex. App.—Dallas 2005, pet. denied); *Mohseni v. Hartman*, 363 S.W.3d 652, 658 (Tex. App.—Houston [1st Dist.] 2011, no pet.). If so, the Cherokee County Court at Law was without jurisdiction to enter the Nunc Pro Tunc Order on Motion for Constructive Trust upon independent grounds unrelated to the real property's homestead status. *See Brightwell v. Barlow, Gardner, Tucker & Garsek*, 619 S.W.2d 249, 254 (Tex. Civ. App.—Fort Worth 1981, no writ) (the

probate court has no jurisdiction over rejected claims under the Probate Code); *Burke v. Satterfield*, 525 S.W.2d 950, 953 (Tex. 1975) ("the subject matter jurisdiction of a court cannot be enlarged by an agreement between the parties or a request that the court exceed its powers.")

Given the prima facie establishment of the Real Property in Interest as Appellants' homestead herein, the absence of fiduciary duty, other special relationship, or wrongful retention of funds to support the imposition or foreclosure of a constructive trust upon the Appellants' real property, the absence of an affirmative adjudication of their homestead rights or an applicable constitutional homestead exception permitting the imposition of an equitable lien upon their homestead or the foreclosure of that lien, and the jurisdictional voidness of the underlying orders, Appellants respectfully assert that the neither the immediate Decree Ordering Sale of Real Property, nor the underlying orders of the Cherokee County Court at Law are shielded from review upon appeal by the doctrine of *res judicata*.

A third, salient argument against consideration of this Honorable Court's prior harmless error analysis is that pointing to evidence of Jerry Byrom's alleged wrong-doing in the record does not retroactively restore the jurisdiction of the trial court to impress a constructive trust upon a homestead, or order the sale of a homestead, when

the constitutional requirements to do so have not been affirmatively adjudicated. Cf. *Cline v. Niblo*, 117 Tex. 474, 481, 8 S.W.2d 633, 636 (Tex. 1928).

A fourth, and final consideration in this regard, is the independent homestead interest of Appellant Daisy "Dimple" Byrom. Like Mr. Byrom, Mrs. Byrom's homestead interest in the Real Property in Interest has never been affirmatively adjudicated. Unlike Mr. Byrom's interest in the real property, which was the subject of the orders of the Cherokee County Court at Law, Mrs. Byrom's interest in the real property at issue has not previously been ordered attached to the judgments entered against Jerry Byrom by the Cherokee County Court at Law. The instantly appealed order– to-wit: the Decree Ordering Sale entered by the 4th District Court of Rusk County, Texas– is the first order attaching either the interest of Appellant Dimple Byrom, or the interest of Appellant Dorothy Berry in the Real Property in Interest.

Although Appellants were unable to locate a significant amount of controlling law on this subject, the persuasive cases on the subject lead Appellants to believe that the law of single spouse transactions encumbering a marital homestead apply herein. *See Curtis Sharp Custom Homes, Inc. v. Glover*, 701 S.W.2d 24, 28 (Tex. App.—Dallas 1985), writ refused NRE (Mar. 12, 1986) (Justice Akin, concurring). Pursuant to the rule, a wife's right in the homestead is a vested right in the land or which she cannot be deprived except as provided by the Constitution and statutes. *See*

*Id.* (Innocent spouse's homestead interest cannot be impaired by wrongdoing of spouse); *See also Parker v. Schrimsher*, 172 S.W. 165, 168 (Tex. Civ. App.—Amarillo 1914), writ refused (Nov. 17, 1915); *See also U.S. v. Rodgers*, U.S.Tex.1983, 103 S.Ct. 2132, 461 U.S. 677, 76 L.Ed.2d 236, on remand 712 F.2d 990 (Pursuant to Texas Constitution, each spouse has separate and undivided possessory interest in the homestead which is only lost by death or abandonment and which may not be compromised either by the spouse or his or her heirs.) Further, it has been held that a valid encumbrance of homestead against a husband does not act as *res judicata* ("an estoppel") to the wife's interest in the homestead. *Gober v. Smith*, 36 S.W. 910, 911 (Tex. Civ. App. 1896, no writ).

An alternate formulation of this rule, is that single spouse transactions which result in an encumbrance upon a marital homestead are not void, but remain inoperative while the property retains its homestead status. *See Zable v. Henry*, 649 S.W.2d 136, 137-38 (Tex. App.—Dallas 1983, no writ); *Villarreal v. Laredo National Bank*, 677 S.W.2d 600, 609 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). While this doctrine is not plainly applicable to the facts of this case– having been developed by Texas courts to deal with the circumstance wherein one spouse sells the marital homestead without the approval or consent of the other– it does afford a potentially just remedy that protects the interests of all parties should the encumbrance upon the

Byrom's homestead not be declared void. As such, even if the Decree Ordering Sale and prior orders of the Cherokee County Court at Law were upheld as a valid encumbrance of the homestead interest of Jerry Byrom, enforcement of the order of sale must be stayed by the homestead interest of Dimple Byrom, an innocent spouse.

## C.  CONCLUSION

Applying the available evidence to the applicable law in this case, is apparent that Appellants' homestead rights have been unlawfully encumbered. Doing justice in this case requires looking beyond the mere language of the orders addressed herein. Doing justice requires that the courts of this State are held to the standard of conduct imposed by the law, even when the conduct of litigants is less than worthy. Examination of the orders of the Cherokee County Court at Law herein reveal the Order for Constructive Trust and Order for Sale of Real Property for what they are: an unlawful circumvention of the constitutional protections afforded to the marital homestead made beyond the jurisdiction of the court in an effort to punish Jerry Byrom's disobedience to the orders of the Cherokee County Court at Law. All for the purpose of satisfying a debt in a manner disfavored by prevailing law:

> "The mere failure to pay an unsecured debt cannot possibly be grounds for impressing upon real estate a constructive trust." *Landram v. Robertson*, 195 S.W.2d 170, 174 (Tex. Civ. App.—San Antonio 1946), writ refused NRE.

"A constructive trust is not merely a vehicle for collecting assets as a form of damages." *KCM Fin. LLC v. Bradshaw*, 13-0199, 2015 WL 1029652, at \*14 (Tex. Mar. 6, 2015)

"A forced sale of the homestead in satisfaction of a debt of any character except as provided by the Constitution... is void." *Cline v. Henry*, 239 S.W.2d 205, 208 (Tex.Civ.App.—Dallas 1951, writ ref'd n.r.e.)

Given the great weight of authority cited herein in support of the Appellants' individual and collective homestead rights in the Real Property in Interest, the Appellants pray that this Honorable Court declare the instant Decree Ordering Sale to be void and/or unenforceable, and further pray that the underlying orders regarding the imposition of constructive trust and order the sale of Appellant's homestead by the Cherokee County Court at Law be collaterally declared void and/or unenforceable, so that Appellants' constitutional homestead rights– including the rights of Appellant Dimple Byrom, an innocent spouse– be honored and protected.

ISSUE 2: THE ORDER TO PAY ATTORNEY FEES CONTAINED IN THE DECREE ORDERING SALE OF REAL PROPERTY AND UNDERLYING ORDERS IMPRESSING A CONSTRUCTIVE TRUST UPON AND ORDERING THE SALE OF APPELLANT'S HOMESTEAD, ARE VOID AS A MATTER OF LAW.

As discussed at length above, the following orders of the 4th District Court of Rusk County, Texas, and of the Cherokee County Court at Law, are void for want of subject matter jurisdiction:

- First Amended Nunc Pro Tunc Order for Sale of Real Property and for Appointment of Receiver ("Cherokee County Order for Sale"), signed and filed on May 13, 2013; (See page 40-42 of Cherokee County Clerk's Record submitted to Court of Appeal on June 14, 2013; *See also* Appendix, Exhibit E)

- Nunc Pro Tunc Order on Motion for Constructive Trust ("Order for Constructive Trust") signed on November 16, 2009, and filed by the Cherokee County Court at Law on November 17, 2009. (See CR 10-16; *See also* Appendix, Exhibit F)

- Decree Ordering Sale of Property ("Rusk County Decree Ordering Sale") on November 14, 2014. (Exhibit A; CR 141-43)

In the interest of judicial economy, Appellants hereby summarize and incorporate by reference their prior arguments as to the voidness of these orders.

-37-

All three orders are void for want of subject matter jurisdiction as the object of the constructive trust and the orders of sale is the homestead property of Appellants, and neither their homestead interests, nor a constitutional exception permitting the imposition of an equitable lien or forced sale has been adjudicated. *See* TEX. CONST. art. XVI, § 50; *Cline v. Niblo*, 117 Tex. 474, 485, 8 S.W.2d 633, 638-39 (Tex. 1928); *Franklin v. Woods*, 598 S.W.2d 946, 950 (Tex. Civ. App.—Corpus Christi 1980); *Yarboro v. Brewster*, 38 Tex. 397, 405-06 (1873); *Crawford v. McDonald*, 88 Tex. 626, 631, 33 S.W. 325, 328 (1895); *Curtis Sharp Custom Homes, Inc. v. Glover*, 701 S.W.2d 24, 27-28 (Tex. App.—Dallas 1985), writ refused NRE (Mar. 12, 1986); *In re Garza*, 126 S.W.3d 268, 271 (Tex.App.-San Antonio 2003, orig. proceeding [mand. denied]); *Allen v. Ramey*, 226 S.W. 489, 491 (Tex. Civ. App.—Texarkana 1920, no writ).

The Cherokee County Order for Constructive Trust is independently void for want of subject matter jurisdiction because there was no special relationship or fiduciary duty upon which to base the imposition of a constructive trust– *See Meadows v. Bierschwale*, 516 S.W.2d 125, 128 (Tex.1974); *In re Marriage of Nolder*, 48 S.W.3d 432, 434 (Tex.App.-Texarkana 2001, pet. denied); *Kostelnik v. Roberts*, 680 S.W.2d 532, 534 (Tex. App.—Corpus Christi 1984), writ refused NRE (Jan. 16, 1985); *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex. 1977); *Baker Botts, L.L.P. v.*

*Cailloux*, 224 S.W.3d 723, 736 (Tex. App.—San Antonio 2007, pet. denied); *Mohseni v. Hartman*, 363 S.W.3d 652, 658 (Tex. App.—Houston [1st Dist.] 2011, no pet.)– and because the creditors of the Estate of Ruby Renee Byrom did not follow the procedure necessary to empower the probate court to obtain jurisdiction to enter the order.  *See* TEX. PROBATE CODE § 147;  *Rowland v. Moore*, 141 Tex. 469, 474, 174 S.W.2d 248, 250 (1943); *Brightwell v. Barlow, Gardner, Tucker & Garsek*, 619 S.W.2d 249, 254 (Tex. Civ. App.—Fort Worth 1981, no writ);  *In re Guardianship of Bayne*, 171 S.W.3d 232, 237-38 (Tex. App.—Dallas 2005, pet. denied); *Mohseni v. Hartman*, 363 S.W.3d 652, 658 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Burke v. Satterfield*, 525 S.W.2d 950, 953 (Tex. 1975).

As previously stated by this Honorable Court,

> "A void order has no force of effect and confers no rights; it is a mere nullity.  *In re Garza*, 126 S.W.3d 268, 271 (Tex.App.-San Antonio 2003, orig. proceeding [mand. denied]).  **Any attorney fees based upon a void order must also be void.**  *Ex parte Fernandez*, 645 S.W.2d 636, 639 (Tex.App.-El Paso 1983, no writ.)" *In re Estate of Byrom*, 12-09-00279-CV, 2011 WL 590588 at *4 (Tex. App.—Tyler Feb. 16, 2011, pet. denied)(mem. op.)

Appellant is aware that the matter of attorney fees upon the various orders of the Cherokee County Court at Law have already been addressed.  However, the matter of the attorney fees awarded to Appellee in the 4th District Court of Rusk County in the amount of $9,000.00, and those yet to be incurred in relation to this appeal, have not

yet been addressed. In any event, the law is clear: "Any attorney fees based upon a void order must be void." *Id.* As such, Appellants pray that the attorney fees awarded to Appellee, and the following attorney fees approved upon the Nunc Pro Tunc Order on Motion for Constructive Trust and the First Amended Nunc Pro Tunc Order for Sale of Real Property and for Appointment of Receiver, entered by the Cherokee County Court at Law, by declared void and/or enforceable.

Such fees include, but are not necessarily limited to, attorney's fees identifiable to the following orders:

- ¶ 11 of the Decree Ordering Sale: "Once the Real Property sells, the Receiver is entitled to $9,000.00 for payment of her fees and costs of Court. It is ORDERED that Receiver shall write herself a check in the amount of $9000.00 for attorney's fees and costs. Additionally, the Receiver is entitled to and is ORDERED to pay all fees, charges and expenses incurred by the Receiver associated with selling the Real Property." (Exhibit A; CR 142)

- ¶¶ 2(a), 3(a) of the First Amended Nunc Pro Tunc Order for Sale of Real Property and for Appointment of Receiver, authorizing Receiver to pay "all fees" and costs of sale associated with the order from the proceeds of the sale of Appellant's real property. (Exhibit E)

- ¶ 13 of the Nunc Pro Tunc Order for Constructive Trust: "Plaintiff expended attorney fees and costs in the pursuit of this constructive trust as set out below, and said fees are properly chargeable as costs of this estate and should be paid by the Estate of RUBY RENEE BYROM." (Exhibit F)

## PRAYER FOR RELIEF

For all reasons set out, Appellants, Jerry Byrom, Daisy "Dimple" Byrom, and Dorothy Berry pray that this Court reverse in all things the orders of the Cherokee County Court and Law and District Court of Rusk County, declare such orders of these courts imposing a constructive upon or compelling the sale of Appellants' homestead void and/or unenforceable, declare that all orders of attorney's fees and costs declared due by the establishment, enforcement, and defense of the orders imposing a constructive trust upon or compelling the sale of Appellants' homestead void and/or unenforceable, and render judgment in favor of Appellants, or alternatively, remand for new trial; or, alternatively, that the orders of the Cherokee County Court at Law and 4th District Court of Rusk County imposing a constructive trust upon and compelling the sale of Appellants' homestead, if not declared void, be declared unenforceable so long as the real property in interest is the homestead of Appellant Daisy "Dimple" Byrom; and for such other and further relief as is available to Appellants at law and in equity.

Respectfully Submitted,

LAW OFFICES OF JOE SHUMATE
107 N. Main
P O Box 1915
Henderson, TX 75653
Tel: (903) 657-1416
Fax: (903) 655-8211


By: _____
    JOE SHUMATE
    State Bar No. 18327500
    JAMES J. ROSENTHAL
    State Bar No. 24088801
    Attorney for AppellantS

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 9.4(i)(3)</u>

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 8,882 words (excluding any caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix). This is a computer-generated document created in WordPerfect, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

Date: May 18, 2015

_____

Joe Shumate
James J. Rosenthal
Attorney for AppellantS
LAW OFFICES OF JOE SHUMATE
107 N. Main St.
P.O. Box 1915
Henderson, TX 75653-1915
903-657-1416  Phone
903-655-8211 Fax
shumate.law@suddenlinkmail.com

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served upon all known counsel of record and/or parties without counsel via:

|        |                                                    |
|--------|----------------------------------------------------|
| _____ | certified U.S. mail, return receipt requested      |
| _____ | hand/messenger delivery                             |
| _____ | regular first class U. S. mail, postage prepaid    |
| \_\_X\_\_  | facsimile/e-filing transmission as set out below   |

Said service being made this 18th day of May, 2015, by sending to:


Joseph F. Zellmer, P.C.
Attorney at Law
620 West Hickory St.
Denton, TX 76201
Fax#: 940-382-7174


_____
JOE SHUMATE
JAMES J. ROSENTHAL

# APPENDIX

## COURT DOCUMENTS

Exhibit A:   Decree Ordering Sale of Real Property

Exhibit B:   *In re Byrom,* No. 12-09-00278-CV, 316 S.W.3d 787 (Tex.App.–Tyler 2010, orig. proceeding [mand. denied])

Exhibit C:   *In re Estate of Byrom*, 12-09-00279-CV, 2011 WL 590588 (Tex. App.—Tyler Feb. 16, 2011, pet. denied)(mem. op.)

Exhibit D:   In re Estate of Byrom, 12-12-00374-CV, 2013 WL 3967432 (Tex. App.—Tyler July 31, 2013), reh'g overruled (Oct. 9, 2013), review denied (Jan. 31, 2014)

Exhibit E:   First Amended Nunc Pro Tunc Order for Sale of Real Property and for Appointment of Receiver

Exhibit F:   Nunc Pro Tunc Order on Motion for Constructive Trust

Exhibit G:   Affidavit of Daisy "Dimple" Byrom

Exhibit H:   Affidavit of Jerry Byrom


## CONSTITUTION AND STATUTES

TEX. CONST. ART. XVI, § 50

TEX. PROBATE CODE § 146(a)(3)

TEX. PROBATE CODE § 147

# EXHIBIT A

**Decree Ordering Sale of Real Property**

NO. 2013-18

FILED

2014 NOV 14 PM 4: 16

COURTNEY TERRY
RUSK COUNTY DISTRICT CLERK

BY _____
_____ DEPUTY

| | | |
|---|---|---|
| JILL CAMPBELL PENN IN HER | § | IN THE DISTRICT COURT |
| CAPACITY AS COURT APPOINTED | § | |
| RECEIVER | § | |
| V. | § | OF |
| JERRY BYROM, DIMPLE BYROM, | § | |
| And DOROTHY BERRY | § | RUSK COUNTY, TEXAS |

## DECREE ORDERING SALE OF REAL PROPERTY

On August 11, 2014, came to be heard the above-entitled and numbered cause. Jill Campbell Penn, Receiver, appeared in person and as attorney of record and announced ready for trial. Defendants Jerry and Dimple Byrom and Dorothy Berry appeared by attorney Joe Shumate.

No jury having been demanded, all matters of fact and things in controversy were submitted to the Court. In due consideration of all matters of fact and law, and after hearing the evidence and arguments of counsel, the Court is of the opinion and finds that:

1. Jerry Byrom, Dimple Byrom, and Dorothy Byrom are the sole owners of the real property more fully described on Exhibit A attached hereto and incorporated herein, more commonly known as 17441 County Road 3226 South, Mount Enterprise, Texas, **specifically** the Second Tract described thereon (the "Real Property").

2. The Real Property is subject to no mortgages, liens, or other encumbrances. The Real Property at Interest is currently owned by the parties as follows:

Jerry Byrom owns an undivided 1/3 interest in the Real Property

Dimple Byrom owns an undivided 1/3 interest in the Real Property

Dorothy Berry owns an undivided 1/3 interest in the Real Property

3. The Cherokee County Court at Law ordered Defendant Jerry Byrom to deposit property of the Estate of RUBY RENEE BYROM in the amount of $85,000.00 in the Registry of the Court of Cherokee County, Texas to be used to pay the judgments awarded to Roy Anderson, who was the temporary guardian of Jerry Byrom's mother before she passed away. Defendant Jerry Byrom did not do so.

4. The present value of the Real Property is between $352,000.00 and $373,000.00.

5. On August 10th 2009, the County Court at Law of Cherokee County signed an order Granting a Constructive Trust, which was later the subject of a Nunc Pro Tunc signed on Nov 16th 2009, that $200,000.00 should be placed in the Registry of the Court of Cherokee County, TX within 30 days. This did not occur.

6. The Real Property is not susceptible to a fair and equitable partition in kind because to do so would hinder the value of the property and cause substantial economic loss such that the entire amount to be placed in the registry of the Court could not be so placed. Accordingly, the Real Property must be sold per the previous order of the Cherokee County Court at Law, affirmed by the Tyler Court of Appeals.

7. IT IS ORDERED THAT Jill Campbell Penn, is appointed Receiver by this Court, to the extent such an appointment is necessary, to conduct the sale of the entire Real Property.

8. Pursuant to the Cherokee County Court at Law Ordering the sale of the Real Property, the Real Property shall be listed for sale for a price that the Receiver believes will ensure the sale of said property within 90 days from the date this Order is signed. Receiver is authorized and ORDERED to enter into a contract to sell the Real Property.

9. Martha McDougal shall be the realtor for the sale of the Real Property for a period of 90 days.

10. If the Real Property does not sell within 90 days from today, the Receiver has authority to adjust the sales price down based on the recommendation of Martha McDougal or to list the Real Property with another agent or for sale via public auction or private auction.

11. Once the Real Property sells, the Receiver is entitled to $9,000.00 for payment of her fees and costs of Court. It is ORDERED that Receiver shall write herself a check in the amount of $9,000.00 for attorneys' fees and costs. Additionally, the Receiver is entitled to and is ORDERED to pay all fees, charges and expenses incurred by the Receiver associated with selling the Real Property.

12. In addition to the costs in paragraph 11, the Receiver is ORDERED to pay Martha McDougal $450.00 for her time incurred in preparing an real estate evaluation for the Court and testifying as to the value of the same. Such costs are to be paid after receipt of the funds from the sale of the Real Property.

13. It is FURTHER ORDERED that all funds necessary to complete the sale of the Real Property will be deducted from the sales price upon sale of the Real Property, including but not limited to closing costs (if any), appraisal costs, inspection costs, title insurance costs, realtor fees, auctioneer/consignment fees, and similar charges. The Receiver is ORDERED to pay all such amounts from the sales proceeds.

14. After payment of the amounts in paragraphs 11 through 13, the Receiver is ordered to deposit the balance of funds from the sale of the Real Property, not to exceed $200,000.00, into the Registry of the Court of Cherokee County, Texas in Cause No. 10745.

13. If after payment of all fees, charges, and expenses and the deposit of $200,000.00 into the Registry of the Court of Cherokee County, Texas in Cause No. 10745 there are any funds remaining or left over from the sale of the Real Property, the Receiver shall pay those directly to Jerry Byrom, Dimple Byrom, and Dorothy Berry in the amount of 1/3 to each.

14. IT IS FURTHER ORDERED that Jerry Byrom, Dimple Byrom, and Dorothy Berry shall not do anything that would harm, hinder, or otherwise delay the sale of the Real Property and each are hereby enjoined from doing anything or taking any action that may harm or delay the sale of the Real Property. This Order shall be enforceable by Contempt.

15. IT IS FURTHER ORDERED that Jill Penn as Receiver is authorized to and shall sign all documents necessary to effectuate a sale of the Real Property and that such signature on all deeds shall constitute full and proper transfer of all right and title to the Real Property. If an issue arises and the signatures of Jerry Byrom, Dimple Byrom, and Dorothy Berry are necessary to effectuate a sale of the Real Property, IT IS ORDERED that those parties participate in all aspects in getting the Real Property sold, including but not limited to signing any real estate contract or deed.

Executed this 14 day of November, 2014 but effective as of August 15, 2014.

_____
Judge Presiding

# EXHIBIT B

***In re Byrom,*** **No. 12-09-00278-CV, 316 S.W.3d 787**
**(Tex.App.–Tyler 2010, orig. proceeding [mand. denied])**

Court of Appeals of Texas,

Tyler.
In re: Jerry BYROM, Relator.
No. 12–09–00278–CV.

July 14, 2010.
Background: Creditor of estate filed a motion to enforce, by contempt, a probate court order that had required independent executor of the estate to deposit $85,000 into the court registry within 30 days. The County Court at Law, Cherokee County, Craig A. Fletcher, J., held independent executor in civil contempt and ordered him confined if he did not make the required deposit and pay creditor's attorney fees and expenses. Independent executor filed petition for writ of habeas corpus.

Holding: On motion for rehearing, the Court of Appeals, James T. Worthen, C.J., held that the contempt order violated constitutional prohibition against imprisonment for debt.

Petition granted.

West Headnotes

[1] Habeas Corpus 197 ⚷528.1

197 Habeas Corpus

    197II Grounds for Relief; Illegality of Restraint
        197II(C) Relief Affecting Particular Persons or Proceedings
            197k528 Contempt
                197k528.1 k. In general. Most Cited Cases
    Habeas corpus is available to review a contempt order entered by a lower court confining a contemnor.

[2] Habeas Corpus 197 ⚷203

197 Habeas Corpus

    197I In General
        197I(A) In General
            197I(A)1 Nature of Remedy in General
                197k203 k. Collateral or direct attack. Most Cited Cases
 Habeas Corpus 197 ⚷207

197 Habeas Corpus

    197I In General
        197I(A) In General
            197I(A)1 Nature of Remedy in General

    197k206 Purpose and Use of Writ
        197k207 k. Release from restraint. Most Cited Cases
    An original habeas proceeding is a collateral attack on a contempt judgment; its purpose is not to determine the ultimate guilt or innocence of the relator, but only to ascertain whether the relator has been unlawfully confined.

[3] Habeas Corpus 197 ⚷528.1

197 Habeas Corpus

    197II Grounds for Relief; Illegality of Restraint
        197II(C) Relief Affecting Particular Persons or Proceedings
            197k528 Contempt
                197k528.1 k. In general. Most Cited Cases
 Habeas Corpus 197 ⚷711

197 Habeas Corpus

    197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
            197III(C)2 Evidence
                197k705 Burden of Proof
                    197k711 k. Particular persons and proceedings. Most Cited Cases
    A court will issue a writ of habeas corpus if the order underlying the contempt is void or if the contempt order itself is void; the relator bears the burden of showing that the contempt order is void and not merely voidable.

[4] Habeas Corpus 197 ⚷702

197 Habeas Corpus

    197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
            197III(C)2 Evidence
                197k701 Presumptions
                    197k702 k. Validity and regularity of prior proceedings. Most Cited Cases
    In a habeas corpus proceeding, until the relator has discharged his burden of showing a contempt order is void and not merely voidable, the contempt order is presumed valid.

[5] Contempt 93 ⚷30

93 Contempt

    93II Power to Punish, and Proceedings Therefor
        93k30 k. Nature and grounds of power. Most Cited Cases
 Contempt 93 ⚷40

93 Contempt

93II Power to Punish, and Proceedings Therefor
93k40 k. Nature and form of remedy. Most Cited Cases

A contempt order is void if it deprives the relator of liberty without due process of law or if it was beyond the power of the court to issue. U.S.C.A. Const.Amend. 14.

[6] Constitutional Law 92 ⚷1106

92 Constitutional Law

92VII Constitutional Rights in General
92VII(B) Particular Constitutional Rights
92k1106 k. Imprisonment for debt. Most Cited Cases
Contempt 93 ⚷78

93 Contempt

93III Punishment
93k78 k. Imprisonment to compel payment of money. Most Cited Cases

An order of confinement for failure to pay a debt violates the Texas Constitution and therefore is beyond the power of the court to issue; consequently, such a contempt order is void. Vernon's Ann.Texas Const. Art. 1, § 18.

[7] Contempt 93 ⚷20

93 Contempt

93I Acts or Conduct Constituting Contempt of Court
93k19 Disobedience to Mandate, Order, or Judgment
93k20 k. In general. Most Cited Cases
Contempt 93 ⚷70

93 Contempt

93III Punishment
93k70 k. Nature and grounds in general. Most Cited Cases

As a general rule, a person who willfully disobeys a valid court order is guilty of contempt and subject to imprisonment for a prescribed period until he complies with the order.

[8] Attachment 44 ⚷1

44 Attachment

44I Nature and Grounds
44I(A) Nature of Remedy, Causes of Action, and Parties
44k1 k. Nature and purpose of remedy. Most Cited Cases
Constitutional Law 92 ⚷1106

92 Constitutional Law

92VII Constitutional Rights in General
92VII(B) Particular Constitutional Rights
92k1106 k. Imprisonment for debt. Most Cited Cases
Execution 161 ⚷1

161 Execution

161I Nature and Essentials in General
161k1 k. Nature of final process in general. Most Cited Cases

An order requiring payment of a debt may be enforced through legal processes like execution or attachment, but not by the imprisonment of the adjudicated debtor. Vernon's Ann.Texas Const. Art. 1, § 18.

[9] Constitutional Law 92 ⚷1106

92 Constitutional Law

92VII Constitutional Rights in General
92VII(B) Particular Constitutional Rights
92k1106 k. Imprisonment for debt. Most Cited Cases
Contempt 93 ⚷2

93 Contempt

93I Acts or Conduct Constituting Contempt of Court
93k1 Nature and Elements of Contempt
93k2 k. In general. Most Cited Cases
Contempt 93 ⚷77

93 Contempt

93III Punishment
93k77 k. Imprisonment on nonpayment of fine. Most Cited Cases

An obligation that is a legal duty arising out of the status of the parties is not a "debt" and therefore may be enforced by contempt; similarly, criminal fines are not debts, and confinement for failure to pay such fines is not constitutionally prohibited. Vernon's Ann.Texas Const. Art. 1, § 18.

[10] Constitutional Law 92 ⚷1106

92 Constitutional Law

92VII Constitutional Rights in General
92VII(B) Particular Constitutional Rights
92k1106 k. Imprisonment for debt. Most Cited Cases

Generally, an obligation to pay money arising out of a contract is a "debt" within the meaning of constitutional prohibition against imprisonment for

a debt; moreover, all causes of action become debts when they are placed in the form of judgments. Vernon's Ann.Texas Const. Art. 1, § 18.

[11] Constitutional Law 92 ⮑1106

92 Constitutional Law

    92VII Constitutional Rights in General
        92VII(B) Particular Constitutional Rights
            92k1106 k. Imprisonment for debt. Most Cited Cases
 Contempt 93 ⮑78

93 Contempt

    93III Punishment
        93k78 k. Imprisonment to compel payment of money. Most Cited Cases
    With few exceptions, attorney's fees are "debts," within meaning of constitutional prohibition against imprisonment for a debt, and cannot be collected by contempt. Vernon's Ann.Texas Const. Art. 1, § 18.

[12] Constitutional Law 92 ⮑1106

92 Constitutional Law

    92VII Constitutional Rights in General
        92VII(B) Particular Constitutional Rights
            92k1106 k. Imprisonment for debt. Most Cited Cases
 Contempt 93 ⮑78

93 Contempt

    93III Punishment
        93k78 k. Imprisonment to compel payment of money. Most Cited Cases
    Contempt order that required independent executor of estate to pay $85,000 into court registry, as required by previous order of probate court, or be jailed for contempt violated constitutional prohibition against imprisonment for debt and was void; estate creditor had filed motion to enforce the probate court order by contempt to assure that property of estate would be available to satisfy creditor's judgment against independent executor, creditor had also been awarded attorney fees and expenses that were payable from estate property, and thus independent executor was held in contempt for failure to deposit funds that would be used to pay debts. Vernon's Ann.Texas Const. Art. 1, § 18.

[13] Constitutional Law 92 ⮑1106

92 Constitutional Law

    92VII Constitutional Rights in General

        92VII(B) Particular Constitutional Rights
            92k1106 k. Imprisonment for debt. Most Cited Cases
    An order requiring a deposit of funds into the court's registry is not enforceable by contempt, as a result of constitutional prohibition against imprisonment for a debt, if any portion of the funds is for the payment of a debt. Vernon's Ann.Texas Const. Art. 1, § 18.

*788 James W. Volberding, Tyler, Joe E. Shumate, for Relator.

Judge Guy W. Griffin, pro se.

Sheriff James Campbell, pro se.

David S. Bouschor II, Joseph F. Zellmer, for Real Party in Interest.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

*OPINION ON REHEARING*

JAMES T. WORTHEN, Chief Justice.

    Real party in interest Roy P. Anderson filed a motion for rehearing, which is overruled. We withdraw our opinion and judgment of January 29, 2010, and substitute the following opinion and corresponding judgment in its place.

    In this original habeas proceeding, Relator Jerry Byrom seeks relief from an order signed on June 16, 2009 finding him in contempt for violation of an order signed on December 8, 2008. The respondent is the Honorable Craig A. Fletcher, Judge of the County Court at Law, Cherokee County, Texas. The real parties in interest are Roy P. Anderson and David S. Bouschor II. We grant habeas corpus relief.

*PROCEDURAL HISTORY*

    Byrom's mother, Ruby Renee Byrom, died on February 5, 2005. Byrom was named in Mrs. Byrom's will as the sole *789 beneficiary and independent executor of her estate. The will was admitted to probate in the County Court at Law, Cherokee County (the "probate court"), and letters testamentary were issued to Byrom. The contempt order challenged here was signed in the probate proceeding as a result of a controversy between Byrom and Anderson, a creditor of Mrs. Byrom's estate.

*The Claim*

    On June 3, 2005, Anderson presented to Byrom and filed in the probate court an unsecured claim against Mrs. Byrom's estate in the sum of $31,992.75, which was based on two orders signed

by the Denton County Probate Court. The orders arose out of a guardianship proceeding in which Byrom was appointed temporary guardian of Mrs. Byrom's person and Anderson was appointed temporary guardian of her estate. The first order authorized payment of $5,117.50 in temporary guardian's fees to Anderson and payment of $8,521.50 in attorney's fees to Bouschor for representing Anderson in the guardianship. The second order, signed after Mrs. Byrom's death, authorized payment of $2,748.75 in temporary guardian's fees to Anderson and $15,535.00 in attorney's fees to Bouschor for representing Anderson. Both orders stated that the fees were to be paid from the funds of Mrs. Byrom's estate within thirty days of the date of the order. However, the fees had not been paid at the time Anderson presented and filed his claim in the probate court. On June 9, 2005, Byrom's attorney informed Anderson that Byrom had rejected his claim.

*Byrom's Removal as Independent Executor*

Approximately two years after Byrom's rejection of the claim, Anderson filed a motion to remove Byrom as independent executor or, alternatively, to require Byrom to post a bond, and to compel an accounting. Anderson alleged that, in trial court cause number 7773, he and Duane Coker, Mrs. Byrom's attorney/guardian ad litem, sued Byrom in his capacity as independent executor "for Authentication of Claims." [FN1] Anderson further alleged that a final order against Byrom was signed in that cause on April 3, 2007. As grounds for Byrom's removal, Anderson alleged, in part, that Byrom had (1) failed to pay claims in the due course of administration, (2) misapplied property committed to his care, (3) failed to comply with a final order of the court, signed on April 23, 2007,[FN2] (4) liquidated real property assets of the estate and made disbursements to himself in his individual capacity without payment to creditors of the estate, and (5) failed to file an inventory, appraisement, and list of claims within ninety days after qualification as required by Texas Probate Code sections 250 and 251.

> FN1. The record reflects that the Denton County Probate Court had awarded $27,551.93 in fees to Coker in the guardianship proceeding.

> FN2. Neither the April 3 order or the April 23 order is part of the record in this proceeding.

The trial court held an evidentiary hearing on Anderson's motion. By order signed on September 10, 2008, the probate court removed Byrom as independent executor, but did not discharge him. The order awarded Anderson $14,034.10 for attorney's fees and expenses incurred in the removal proceeding, and ordered that Byrom pay this amount to Anderson within thirty days of the order. Additionally, the order included a finding that Mrs. Byrom's estate owned an interest in certain Denton County real property, which Byrom had converted to cash in the amount of $622,786.22. The order also directed Byrom to deposit estate property in that amount into the registry of the court within*790 thirty days of the order. On Byrom's motion, the court signed a reformed order on December 8, 2008, reducing the required deposit to $85,000.00.

*Contempt Proceeding*

Byrom did not comply with the December 8, 2008 order, and on March 20, 2009, Anderson filed a motion to enforce the order by contempt. He requested that Byrom be confined in jail for a period not to exceed six months for each violation until he deposited $85,000.00 into the court's registry and paid Anderson's fees and expenses incurred in the contempt proceeding. Byrom filed a written response stating that he was no longer the executor of Mrs. Byrom's estate and did not have access to any funds of the estate.

The trial court conducted an evidentiary hearing on Anderson's motion. Byrom testified that he had not complied with the court's order because he did not have $85,000.00, but acknowledged that he had received $622,786.22 as property belonging to the estate. His testimony was conflicting concerning whether he received the money before or after the December 8, 2008 order was signed. Anderson's attorney then proved up $7,058.17 in attorney's fees and expenses incurred in the contempt proceeding.

At the conclusion of the hearing, the trial court held Byrom in civil contempt after finding that he had failed to deposit $85,000.00 in estate funds into the court's registry as required by the December 8, 2008 order. Byrom was ordered to report to the court on July 2 at 9:00 a.m. at which time he would be remanded to the Cherokee County jail if he had not purged himself of the contempt by making the required deposit and paying Anderson's attorney's fees and expenses in the contempt proceeding. [FN3] Byrom did not purge himself of the contempt and was confined in the Cherokee County jail.

> FN3. Because we are granting habeas relief, we need not address the trial court's requirement that, to purge himself of the contempt, Byrom must pay Anderson's attorney's fees and expenses in the contempt proceeding in addition to making the required deposit.

*Habeas Proceedings*

Byrom filed an application for writ of habeas corpus seeking bail, and the trial court signed an order setting his bond at $80,000.00. His attorney filed a bond, and Byrom was released from jail. He then amended his habeas application requesting that the court grant an evidentiary hearing and, after hearing evidence, order him released from confinement. The court conducted the requested hearing on September 2, 2009. Byrom testified that at the time the Denton County property was sold, he did not have notice of any claims he would owe out of the proceeds or any of the fees that he had been ordered to pay. He again insisted that he had none of the funds remaining. He also admitted that the day before he was held in contempt, he signed gift deeds conveying four tracts of land to his daughter. He testified, however, that he did not purchase the property with money from his mother's estate.

At the conclusion of the hearing, the trial court denied habeas relief, ordered Byrom taken into custody, and set his bond at $95,000.00 cash. Byrom then filed this original habeas proceeding, and also filed a motion for temporary relief, which was denied.

### AVAILABILITY OF HABEAS CORPUS

[1][2] Habeas corpus is available to review a contempt order entered by a lower court confining a contemnor. *Ex parte Gordon,* 584 S.W.2d 686, 687–88 (Tex.1979) (orig. proceeding). An original habeas proceeding is a collateral attack on a contempt judgment. *Ex parte Rohleder,* 424 *791 S.W.2d 891, 892 (Tex.1967) (orig. proceeding); *In re Ragland,* 973 S.W.2d 769, 771 (Tex.App.-Tyler 1998, orig. proceeding). Its purpose is not to determine the ultimate guilt or innocence of the relator, but only to ascertain whether the relator has been unlawfully confined. *Ex parte Gordon,* 584 S.W.2d at 688.

[3][4] A court will issue a writ of habeas corpus if the order underlying the contempt is void or if the contempt order itself is void. *See Ex parte Shaffer,* 649 S.W.2d 300, 301 –02 (Tex.1983) (orig. proceeding); *Ex parte Gordon,* 584 S.W.2d at 688. The relator bears the burden of showing that the contempt order is void and not merely voidable. *In re Munks,* 263 S.W.3d 270, 272 –73 (Tex.App.-Houston [1st Dist.] 2007, orig. proceeding). Until the relator has discharged his burden, the contempt order is presumed valid. *In re Parr,* 199 S.W.3d 457, 460 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding).

[5][6] A contempt order is void if it deprives the relator of liberty without due process of law or if it was beyond the power of the court to issue. *See In re Coppock,* 277 S.W.3d 417, 418 (Tex.2009) (orig. proceeding). An order of confinement for failure to pay a debt violates the Texas Constitution and therefore is beyond the power of the court to issue. *See In re Henry,* 154 S.W.3d 594, 596 (Tex.2005) (orig. proceeding). Consequently, such an order is void. *Id.*

### VALIDITY OF THE CONTEMPT ORDER

In his first issue, Byrom asserts that Anderson and Bouschor have "creatively used the procedures for civil contempt to collect their legal and accounting fees, rather than through well established debt collection procedures. " He also makes reference to the attorney's fees awarded to Anderson by the probate court, which are ordered payable out of estate property. The authority Byrom cites pertains to the prohibition against imprisonment for debt found in article I, section 18 of the Texas Constitution and the prohibition against collection of attorney's fees by contempt. He contends that, in light of the cited authority, the contempt order is void.

Anderson responds that Byrom was held in contempt for failing to deposit $85,000.00 into the registry of the court as ordered on December 8, 2008, and that there is nothing in the record to indicate that the $85,000.00 was for the collection of attorney's fees.

#### Imprisonment for Debt

[7][8] As a general rule, a person who willfully disobeys a valid court order is guilty of contempt and subject to imprisonment for a prescribed period until he complies with the order. *Ex parte Hall,* 854 S.W.2d 656, 658 (Tex.1993) (orig. proceeding). But the Texas Constitution provides that "[n]o person shall ever be imprisoned for debt." *See* TEX. CONST. art. I, § 18. This provision establishes that "[i]t is not the policy of the law [in Texas] to enforce the collection of mere civil debts by contempt proceedings." *Ex parte Britton,* 127 Tex. 85, 90, 92 S.W.2d 224, 227 (1936) (orig. proceeding). An order requiring payment of a debt may be enforced through legal processes like execution or attachment, but not by the imprisonment of the adjudicated debtor. *Ex parte Hall,* 854 S.W.2d at 658; *see also In re Nunu,* 960 S.W.2d 649, 650 (Tex.1997) (orig. proceeding) (reasoning that because a judgment awarding damages cannot be enforced by contempt, court cannot require payment of expenses incurred as means of purging contempt).

[9] Not every obligation to pay money is a debt within the meaning of article I, section 18. *See Ex parte Davis,* 101 Tex. 607, 612, 111 S.W. 394, 396 (1908) (orig. *792 proceeding) ( "There are many instances in the proceedings of the courts where the performance of an act may be enforced by imprisonment and would not come within the prohibition of the Constitution, although it might

involve the payment of money. "). For example, an obligation that is a legal duty arising out of the status of the parties is not a debt and therefore may be enforced by contempt. *See In re Henry,* 154 S.W.3d at 596 (holding that past due child support is not a debt); *Ex parte Gorena,* 595 S.W.2d 841, 846–47 (Tex.1979) (orig. proceeding) (holding that former husband was constructive trustee for portion of monthly retirement pay awarded to former wife in divorce decree; therefore obligation to deliver money to former wife was not "debt"). Similarly, criminal fines are not debts, and confinement for failure to pay criminal fines is not prohibited. *In re Henry,* 154 S.W.3d at 596 n. 1.

[10][11] Generally, however, an obligation to pay money arising out of a contract is a debt within the meaning of article I, section 18. TEX. CONST. art. I, § 18 interp. commentary. Moreover, "[a]ll causes of action become debts when they are placed in the form of judgments.... " *Id.; see also Ex parte Hall,* 854 S.W.2d at 658. And with few exceptions, none of which are applicable here, attorney's fees are debts and cannot be collected by contempt. *See Wallace v. Briggs,* 162 Tex. 485, 488 –90, 348 S.W.2d 523, 525 –26 (1961) (orig. proceeding); *Ex parte Dolenz,* 893 S.W.2d 677, 680 –81 (Tex.App.-Dallas 1995, orig. proceeding).

*The Contempt Order*

[12] Anderson contends that Byrom was held in contempt and confined for failure to comply with the respondent's December 8, 2008 order by depositing $85,000.00 in the court's registry. He points out that the order Byrom violated was a "court order made mandatory by [Texas Probate Code section] 149C(b).... " Because the order Byrom disobeyed was mandatory by statute, Anderson contends that contempt and confinement are permissible.

An order removing an independent executor must direct the disposition of the assets remaining in the name or under the control of the removed executor. TEX. PROB.CODE ANN. § 149C(b) (Vernon Supp. 2009). The order requiring the $85,000 deposit was signed in compliance with this section. However, Anderson has a judgment against Byrom as independent executor of Mrs. Byrom's estate. From our review of the record, it is clear that Anderson sought Byrom's removal as independent executor and filed his motion to enforce the December 8, 2008 order by contempt to assure that property of the estate would be available to satisfy his judgment against Byrom. Because Byrom is the sole beneficiary under the will, there are no other beneficiaries who would benefit from the $85,000.00 deposit. Therefore, it is also clear that the respondent required the deposit for Anderson's benefit.[FN4]

FN4. For example, Byrom's motion to reform the original order removing Byrom as independent executor requested in part that the amount of the deposit, originally set at $622,786.22, be reduced because the previous order "embrace[d] a much broader portion of the Estate of Ruby Renee Byrom than is reasonably necessary to protect any litigant herein. " Moreover, Anderson states in his response that the $85,000.00 deposit was required pursuant to section 149C(b) of the Texas Probate Code and refers us to a subsequent order entered by the respondent, which contains the following finding:

"(8) By Order of this Court entered December 8, 2008, JERRY BYROM was ordered to deposit property of the Estate of RUBY RENEE BYROM in the amount of $85,000.00 in the Registry of the Court of Cherokee County, Texas to be used to pay the judgments awarded Plaintiff [Anderson]."

[13] An order requiring a deposit of funds into the court's registry is not enforceable*793 by contempt if any portion of the funds is for the payment of a debt. *See In re Wiese,* 1 S.W.3d 246, 251 (Tex.App.-Corpus Christi 1999, orig. proceeding) (contempt order void because portion of funds to be deposited in registry was attorney's fees that were part of turnover order); *Ex parte Roan,* 887 S.W.2d 462, 465 (Tex.App.-Dallas 1994, orig. proceeding) (order void where trial court conditioned coercive contempt upon payment of funds into registry and funds were ordered deposited for judgment creditors' benefit). Here, Anderson's judgment is against Byrom in his representative capacity and is based on the fee orders of the Denton County Probate Court. He also has been awarded attorney's fees and expenses incurred in various proceedings in the probate court that are payable from estate property. As we have previously stated, a judgment is a debt and cannot be collected by contempt. *Ex parte Hall,* 854 S.W.2d at 658. Additionally, the attorney's fees and expenses awarded to Anderson by the probate court are debts. *See Wallace v. Briggs,* 162 Tex. at 488–90, 348 S.W.2d at 525 –26; *Ex parte Dolenz,* 893 S.W.2d at 680 –81. Therefore, the only sums payable to Anderson out of estate property are for debts. Consequently, Byrom has been held in contempt for failure to deposit funds that will be used to pay debts. *See Ex parte Roan,* 887 S.W.2d at 465. Thus, the contempt order violates the constitutional prohibition against imprisonment for debt and is void. *See In re Henry,* 154 S.W.3d at 595. Because the contempt order is void, the order

illegally restrains Byrom. *See In re Wiese,* 1 S.W.3d at 251; *Ex parte Roan,* 887 S.W.2d at 465.

*The Buller Cases*

Anderson disagrees and calls our attention to the *Buller* cases. *See Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991) ( *"Buller I "*); *Ex parte Buller,* 834 S.W.2d 622, 623 –24 (Tex.App.-Beaumont 1992, orig. proceeding) (*"Buller II "*). He urges that the facts in *Buller II* and those presented in this case are indistinguishable and concludes that we should deny Byrom's habeas petition.

*Buller I* is an appeal from a turnover order directing Patricia Buller, independent executrix of her husband's estate, to deliver a specific amount of estate cash to the sheriff for levy in partial satisfaction of a judgment. *Buller I,* 806 S.W.2d at 224. In reviewing the order, the supreme court stated that once the cash was traced to Buller in her representative capacity, a presumption arose that those assets were in her possession. *Id.* at 226. The burden then shifted to Buller to account for the assets. *Id.* The court noted that Buller presented only scant documentation to support her testimony that she no longer had possession of the cash. *Id.* Ultimately, the court determined that "[c]learly the trial court was within its discretionary authority in disbelieving Mrs. Buller's unsubstantiated claim that [the] cash was spent.... " *Id.* Specifically, the court opined that "simply asserting 'I spent it ' is unacceptable." *Id.* at 227. Consequently, the court affirmed the portions of the turnover order that relate to our analysis in this case. *See id.*

Despite the supreme court's ruling, Buller refused to comply with the turnover order. As a result, the trial court held her in contempt and confined her. *See Buller II,* 834 S.W.2d at 624. She sought habeas relief arguing, in part, that her confinement violated the constitutional prohibition of imprisonment for debt. *Id.* at 626; *see also* TEX. CONST. art. I, § 18. The Beaumont*794 court of appeals held to the contrary, relying on two cases it described as "compellingly persuasive. " *Id.* at 626–27.

In the first case, the supreme court determined that a husband could be held in contempt and confined for refusing to obey an order to pay into the court's registry his wife's share of certain community property funds. *Ex parte Preston,* 162 Tex. 379, 381, 347 S.W.2d 938, 939 (1961). Preston argued, in part, that the sum to be paid constituted a debt to his wife and therefore he could not constitutionally be held in contempt and confined for his failure to deposit the funds. *Id.,* 162 Tex. at 382, 347 S.W.2d at 940; *see also* TEX. CONST. art. I, § 18. The court observed that the

money Preston was ordered to deposit rightfully belonged to his wife under the terms of the divorce decree. *Id.,* 162 Tex. at 384, 347 S.W.2d at 941. Thus, he was not a debtor of his wife, but a constructive trustee holding a portion of the assets awarded to her in the divorce decree. *Id.* In the court's view, there was "no question ... about the right of the [trial] court to hold a trustee in contempt of court for willfully refusing to obey an order to pay over funds held in his hands to the one rightfully entitled thereto." *Id.*

In the second case, the supreme court held that a husband could be held in contempt and confined for refusing to surrender property to his former wife as ordered in the divorce decree. *Ex parte Gorena,* 595 S.W.2d at 846 –47. Gorena was committed to jail for contempt for failing to pay his former wife monthly payments of a portion of his military retirement benefits. *Id.* at 843. In denying habeas relief, the supreme court concluded that Gorena held the unpaid funds as a trustee for his wife. *See id.* at 846 –47. Therefore, he was not being imprisoned for debt. *See id.*

In short, the supreme court in Preston and Gorena held that the contemnor's refusal to deliver the property of another to its rightful owner as ordered was punishable by contempt and confinement. In applying these two cases, the court stated in *Buller II* that

[a] trustee or other fiduciary such as a legal representative or independent executrix may constitutionally be fined and jailed for contemptuously refusing to obey an order to turn over funds held in her hands and subject to her right of possession to a proper authority or entity that is lawfully and rightfully entitled to those funds for levy.

*Buller II,* 834 S.W.2d at 626. It then concluded that Buller, as independent executrix of her husband's estate, had a fiduciary relationship to the estate's creditors. *Id.* Because of this relationship, the court reasoned, her confinement was not constitutionally prohibited. *Id.* We do not read *Preston* and *Gorena* so broadly.

We first note that Buller was the independent executrix of her husband's estate and consequently "a holder of property of a judgment debtor[.] " *See Buller I,* 806 S.W.2d at 226. She was not a holder of property belonging to the judgment creditor that had sued her. *See id.; see also* TEX. PROB.CODE ANN. § 37 (Vernon 2003) (estate of testate decedent vests immediately in devisees, but independent executor has right to possession of estate). Moreover, the holdings in *Preston* and *Gorena* do not turn on, and the court does not

address, whether the contemnor was a fiduciary by virtue of his holding the property of another. The critical facts were that Preston and Gorena possessed the property of another but refused to deliver it to the rightful owner, despite being ordered to do so. And even if fiduciary duty had been the basis for the court's holdings in those cases, we have been unable to locate any Texas case holding that an independent executor has a fiduciary relationship*795 with estate creditors. Finally, the above quoted language from *Buller II* is, in substance, a determination that a fiduciary is not subject to the constitutional prohibition of imprisonment for debt. We do not reach the same conclusion from our reading of the cases cited in *Buller II* and other cases addressing the prohibition of imprisonment for debt. [FN5] Consequently, for the reasons we have discussed, we respectfully decline to follow *Buller II* here.[FN6]

> FN5. In *Buller I,* the dissent predicted that "[e]ven as to any estate assets which Buller has not spent, the turnover order will ultimately prove unenforceable. The Texas Bill of Rights prohibits the trial court from enforcing the turnover order by imprisonment.... In the present case, enforcement of the turnover order by imprisonment would fall squarely within the constitutional prohibition. " *Buller I,* 806 S.W.2d at 229 (Mauzy, J., dissenting). In *Buller II,* Justice Burgess noted in his dissent that the trial court's order directed Buller to turn over a specific sum, which was "nothing more than telling her to pay the debt." In his view, Buller was entitled to the guarantee of article I, section 18, and could not be confined for refusing to deliver the funds. *Buller II,* 834 S.W.2d at 627–28 (Burgess, J., dissenting).

> FN6. The court also held that the constitutional prohibition against imprisonment for debt does not apply "unless the contemn[o]r demonstrates inability to pay. " *See Buller II,* 834 S.W.2d at 626 (citing *Pierce v. Vision Invs.,* 779 F.2d 302, 309 (5th Cir.1986) and *Ex parte Smyers,* 529 S.W.2d 769, 770 (Tex.1975)). These cases hold that a contempt order is not proper if the contemnor is unable to comply with the order he failed to obey. *See Pierce,* 779 F.2d at 310; *Smyers,* 529 S.W.2d at 769–70. According to the dissent in *Buller I,* the express language of the 1836 Republic of Texas Constitution required inability to pay, but this language has been included in subsequent state constitutions. *Buller I,* 806 S.W.2d at 229.

*DISPOSITION*

Because we have held that the contempt order is void and Byrom is illegally restrained, we *grant* Byrom's petition for writ of habeas corpus and order him discharged. Thus, Byrom's first issue is dispositive, and we need not address his remaining issues. *See* TEX.R.APP. P. 47.1. All pending motions are overruled as moot.
Tex.App.–Tyler,2010.

In re Byrom
316 S.W.3d 787
END OF DOCUMENT

# EXHIBIT C

*In re Estate of Byrom*, 12-09-00279-CV, 2011 WL 590588
(Tex. App.—Tyler Feb. 16, 2011, pet. denied)(mem. op.)

H

Only the Westlaw citation is currently available.
SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

***MEMORANDUM OPINION*(PUBLISH)**

Court of Appeals of Texas,

Tyler.
In the ESTATE OF Ruby Renee BYROM, Deceased.
No. 12–09–00279–CV.

Feb. 16, 2011.
West KeySummary**Executors and Administrators 162 ☞35(1)**

162 Executors and Administrators

   162II Appointment, Qualification, and Tenure
     162k35 Removal
       162k35(1) k. Grounds in General. Most Cited Cases
**Executors and Administrators 162 ☞456(4)**

162 Executors and Administrators

   162X Actions
     162k456 Costs
       162k456(4) k. Unreasonable Resistance, and Refusal to Refer Claim or Consent to Determination on Settlement of Accounts. Most Cited Cases
**Trusts 390 ☞102(2)**

390 Trusts

   390I Creation, Existence, and Validity
     390I(C) Constructive Trusts
       390k102 Breach of Duty by Person in Fiduciary Relation in General
         390k102(2) k. Executors, Administrators, and Guardians. Most Cited Cases
   Testator's son was removed as the independent executor of testator's estate for cause, and thus creditors of the estate were entitled under the Probate Code to an award of attorney's fees incurred to obtain son's compliance to perform his statutory duty as independent executor. As an independent executor, son had a statutory duty to pay claims against testator's estate. Son failed to do so, warranting his removal for cause. Further, creditors moved for the imposition a constructive trust to force son to comply with his statutory duty to pay their claims from the assets of testator's estate, and the probate court granted the motion. V.A.T.S. Probate Code, § 245(a)(2).

Appeal from the County Court of Cherokee County, Texas, Craig A. Fletcher, Judge.

Joe E. Shumate, for Appellant.
Scott E. Rectenwald, for Ad litem.

Joseph F. Zellmer, for Appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

***MEMORANDUM OPINION***

JAMES T. WORTHEN, Chief Justice.
  ***1** Jerry Byrom appeals the county court's orders holding him in contempt and committing him to county jail, awarding attorney's fees, and imposing a constructive trust. On appeal, Byrom presents three issues. We dismiss in part, vacate in part, and affirm in part.

***BACKGROUND***

  Ruby Renee Byrom died on February 5, 2005, and her son, Byrom, was named in her will as the sole beneficiary and independent executor of her estate. The will was admitted to probate in the County Court at Law of Cherokee County (the probate court), and Byrom was appointed the independent executor of Ruby's will and estate without bond. A few months after Byrom was appointed, Roy Anderson and Duane L. Coker filed claims in the probate court against Ruby's estate. Anderson, who had been appointed by a Denton County court as Ruby's temporary guardian, filed a claim based on two orders from that court for payment of attorney's and temporary guardian's fees. Coker, who had been appointed as the attorney ad litem for Ruby in the guardianship proceeding, filed a claim based on an order from the Denton County court for payment of attorney's fees. Byrom, as the independent executor of Ruby's estate, denied Anderson's and Coker's claims.
  Anderson filed a motion to remove Byrom as independent executor, or in the alternative, to have Byrom show cause why he should not be required to post a bond. Anderson also moved to compel an accounting and requested attorney's fees. Byrom filed an inventory, appraisement, and list of claims, and Anderson objected to it. Thereafter, the probate court removed Byrom as independent executor for cause, but did not discharge him. Further, the probate court ordered Byrom to file an accounting and deposit $85,000.00 [FN1] into the registry of the court within thirty days. The probate court also awarded Anderson attorney's fees against Ruby's estate in the amount of $14,034.10 for prosecuting the removal of the independent executor.

     FN1. In the order removing Byrom as

independent executor, Byrom was ordered to deposit $622,786.22 into the registry of the court. On December 9, 2008, the probate court issued a reformed order directing Byrom to deposit $85,000.00 into the registry of the court.

Then, Anderson filed a motion to enforce the removal order by contempt and requested attorney's fees. On June 16, 2009, the probate court ordered that Byrom be held in contempt for failing to deposit $85,000.00 into the registry of the court, and ordered that Byrom be committed to the county jail until he purged himself of the contempt and complied with the probate court's orders. The probate court also awarded Anderson attorney's fees against Ruby's estate in the amount of $7,058.17 for the contempt action.

Anderson filed a motion for a constructive trust to be imposed on Byrom's real property in Mount Enterprise, Texas, and requested attorney's fees. Coker, as intervenor, filed a notice of joinder in the motion to impose a constructive trust and an application for a turnover order. On August 10, 2009, the probate court granted the motion for a constructive trust, finding that Byrom had breached his fiduciary duty to Ruby's estate. [FN2] The probate court ordered that a constructive trust in the amount of $200,000.00 be imposed on Byrom's real property, and that if that amount was not paid into the registry of the court within thirty days, the probate court would order that the property be sold. Further, the probate court awarded Anderson and Coker attorney's fees against Ruby's estate totaling $6,412.94 incurred in obtaining the constructive trust. The probate court also ordered that a writ of attachment be issued for Byrom for failing to appear at the August 10 hearing even though he was ordered to do so. Finally, the probate court ordered that Byrom be brought before the court to fulfill the terms of the order holding him in contempt.

> FN2. On November 16, 2009, the probate court entered a nunc pro tunc order to correct the real property description attached to the original judgment imposing the constructive trust.

*2 Byrom filed an application for a writ of habeas corpus seeking bond and the probate court set his bond at $80,000.00. Byrom's attorney filed the bond and Byrom was released. After a hearing, the probate court denied Byrom's application for writ of habeas corpus, ordered Byrom taken into custody, and set his bond at $95,000.00. Byrom filed another habeas application, which was denied. This appeal followed.

### ORDER OF CONTEMPT

In his first issue, Byrom argues that the probate court erred by finding him in contempt and committing him to the county jail for violation of its removal order requiring him to deposit $85,000.00 into the registry of the court. More specifically, Byrom contends that the June 16, 2009 contempt order violates the Texas Constitution, which forbids that a person be imprisoned or incarcerated for a debt.

A contempt order is reviewable only by a petition for writ of habeas corpus if the person held in contempt is confined. *See In re Henry,* 154 S.W.3d 594, 596 (Tex.2005); *Cadle Co. v. Lobingier,* 50 S.W.3d 662, 671 (Tex.App.-Fort Worth 2001, pet. denied) (citing *In re Long,* 984 S.W.2d 623, 625 (Tex.1999) (orig .proceeding)). Therefore, we lack jurisdiction to review Byrom's challenge to the June 16, 2009 contempt order on appeal. *See Tex. Animal Health Comm'n v. Nunley,* 647 S.W.2d 951, 952 (Tex.1983); *Vernon v. Vernon,* 225 S.W.3d 179, 180 (Tex.App.-El Paso 2005, no pet.); *see also In re Long,* 984 S.W.2d at 625.

Moreover, on September 8, 2009, Byrom filed a petition for a writ of habeas corpus with this court, complaining of the June 16, 2009 contempt order. We granted Byrom's petition for writ of habeas corpus and ordered him discharged because we determined that the contempt order violated the constitutional prohibition against imprisonment for debt and therefore, was void.[FN3] Consequently, even if the contempt order could otherwise be reviewed by appeal, the issue Byrom raises here is moot. *See Williams v. Lara,* 52 S.W.3d 171, 184 (Tex.2001) (stating that if a party lacks a legally cognizable interest in obtaining relief and, thus, no longer faces the unconstitutional conduct about which he complains, that party's claim is moot).

> FN3. *See In re Byrom,* 316 S.W.3d 787, 793–95 (Tex.App.-Tyler 2010, orig. proceeding [mand. denied] ).

Byrom's first issue is dismissed for want of jurisdiction.

### ATTORNEY'S FEES

In his second issue, Byrom contends that the probate court erred in ordering subsequent attorney's fees for failure to pay a court-ordered claim for attorney's fees. In his brief, Byrom states that there were three separate awards of attorney's fees. We will address each award of attorney's fees separately.

**Removal of Independent Executor**

On September 10, 2008, the probate court

removed Byrom as independent executor of Ruby's estate, and awarded Anderson attorney's fees against the estate in the amount of $14,034.10 for prosecuting Byrom's removal as the independent executor.

Before addressing the propriety of the fee award, we must first determine whether the award is appealable. To do so, we consider whether the probate court's order removing Byrom as the independent executor—the order that includes the fee award—is an appealable order. Generally, an appeal may be taken only from a final judgment. *Lehmann v. Har –Con Corp.,* 39 S.W.3d 191, 195 (Tex.2001). Probate proceedings are an exception to the "one final judgment" rule; in such cases, "multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *De Ayala v. Mackie,* 193 S.W.3d 575, 578 (Tex.2006) (quoting *Lehmann,* 39 S.W.3d at 192). The appropriate test for jurisdiction adopted by the Texas Supreme Court is as follows:

*3 If there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

*Id.* (quoting *Crowson v. Wakeham,* 897 S.W.2d 779, 783 (Tex.1995)). In addition, courts may assess finality by determining whether the order to be challenged "dispose[d] of all parties or issues in a particular phase of the proceedings" for which it was brought. *Young v. First Community Bank, N.A.,* 222 S.W.3d 454, 457 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (quoting *De Ayala,* 193 S.W.3d at 579).

Here, there is no express statute providing that an order removing an independent executor is final and appealable. *See Logan v. McDaniel,* 21 S.W.3d 683, 688 (Tex.App.-Austin 2000, pet. denied). The question, then, is whether the order removing Byrom as the independent executor disposed of each issue raised in the pleadings for that part of the probate proceeding or, in other words, whether the order conclusively disposed of that phase of the proceeding. *See id.* Anderson filed a motion requesting that Byrom be removed as the independent executor of Ruby's estate for cause, or in the alternative, be required to show cause why he should not be required to post a bond. Anderson also moved to compel an accounting and sought his attorney's fees. The probate court's order removed Byrom as the independent executor of Ruby's estate, but did not discharge him, ordered him to

file an accounting, and awarded attorney's fees against the estate. Because the order challenged here addressed each issue raised in Anderson's motion, thereby conclusively disposing of this phase of the probate proceeding, the order removing Byrom as independent executor is a final and appealable order. *See id.; De Ayala,* 193 S.W.3d at 578. Therefore, the award of attorney's fees included in the order is also appealable.

Next, we must determine whether Byrom timely appealed the fee award. The removal order was signed on September 10, 2008. Byrom timely filed a motion to reform the judgment or alternatively, for new trial, complaining that the award of attorney's fees was excessive, unreasonable, and unnecessary. Therefore, Byrom was required to file his notice of appeal on or before December 9, 2008. *See* TEX.R.APP. P. 26.1(a)(1) (stating that a notice of appeal must be filed within ninety days after the judgment is signed if any party timely files a motion for new trial). However, Byrom did not file his notice of appeal until September 9, 2009. *See id* . Because Byrom did not timely file a notice of appeal of the fee award, we are without jurisdiction to consider this portion of his second issue. *See* TEX.R.APP. P. 42.3(a).

### Constructive Trust

*4 On August 10, 2009, the probate court granted Anderson's motion for a constructive trust, and awarded Anderson attorney's fees against Ruby's estate in the amount of $4,662.94 for the constructive trust. On August 14, 2009, the probate court also granted Coker's joinder in the motion for a constructive trust, and awarded Coker attorney's fees against Ruby's estate in the amount of $1,750.00 for the constructive trust. These awards totaled $6,412.94.

The availability of attorney's fees under a particular statute is a question of law. *Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 94 (Tex.1999). We review the availability of an award of attorney's fees de novo. *Estate of Hawkins,* 187 S.W.3d 182, 185 (Tex.App.-Fort Worth 2006, no pet.). An award of attorney's fees is permissible if authorized by statute or by contract between the parties. *Colonial Am. Casualty & Surety Co. v. Scherer,* 214 S.W.3d 725, 729 (Tex.App.-Austin 2007, no pet.). If a personal representative is removed for cause, the personal representative and the sureties on the personal representative's bond are liable for reasonable attorney's fees incurred in removing the personal representative or in obtaining compliance regarding any statutory duty the personal representative has neglected. TEX. PROBATE CODE ANN. § 245(a)(2) (Vernon Supp.2010). In other words, section 245 provides for attorney's fees

incurred in connection with the removal of a representative for cause or due to the neglect of an administrator in performing his statutory duties. *Scherer,* 214 S.W.3d at 731; *Estate of Hawkins,* 187 S.W.3d at 185.

Here, Byrom was removed as the independent executor of Ruby's estate for cause. *See Scherer,* 214 S.W.3d at 731. Anderson's motion for a constructive trust, and Coker's joinder in Anderson's motion, included allegations that Byrom failed to deposit funds into the registry of the court as ordered by the probate court to pay claims Ruby's estate owed to them. As an independent executor, Byrom had a statutory duty to pay claims against Ruby's estate. *See* TEX. PROBATE CODE ANN. § 146(a)(3) (Vernon 2003). He failed to do so. Thus, Anderson and Coker requested a constructive trust to force Byrom to comply with his statutory duty to pay their claims from the assets of Ruby's estate. Because Byrom was removed as independent executor for cause and Anderson and Coker incurred attorney's fees to obtain Byrom's compliance to perform his statutory duty, the probate court was authorized by statute to award Anderson and Coker attorney's fees incurred in connection with the constructive trust. *See* TEX. PROBATE CODE ANN. § 245(a)(2); *Scherer,* 214 S.W.3d at 731; *Estate of Hawkins,* 187 S.W.3d at 185. Accordingly, we overrule that portion of Byrom's second issue regarding the award of attorney's fees to Anderson and Coker incurred in connection with the constructive trust.

### Contempt

Finally, Byrom argues that there is no provision in the Texas Probate Code for obtaining attorney's fees for civil contempt actions after an independent executor has been removed. As noted above, the probate court ordered that Byrom be held in contempt, committed him to the county jail, and awarded Anderson attorney's fees against Ruby's estate in the amount of $7,058.17 for the contempt action. We granted Byrom's petition for writ of habeas corpus regarding the June 16, 2009 contempt order and ordered him discharged because we determined that the contempt order violated the constitutional prohibition against imprisonment for debt and therefore, was void. A void order has no force or effect and confers no rights; it is a mere nullity. *In re Garza,* 126 S.W.3d 268, 271 (Tex.App.-San Antonio 2003, orig. proceeding [mand. denied] ). Any attorney's fees based upon a void order must also be void. *Ex parte Fernandez,* 645 S.W.2d 636, 639 (Tex.App.-El Paso 1983, no writ). Because the June 16, 2009 contempt order is void, the probate court's award of attorney's fees to Anderson for the contempt action is also void. *See id.* Accordingly, we sustain that portion of Byrom's second issue.

### Disposition

**\*5** Byrom's second issue is dismissed for want of jurisdiction in part, overruled in part, and sustained in part.

### CONSTRUCTIVE TRUST

In his third issue, Byrom argues that he was not given proper legal notice prior to the entry of the order granting the constructive trust. More specifically, he contends that he was not given notice of the hearing and, therefore, the order is voidable.

### Facts

At the hearing on the motion for constructive trust on August 10, 2009, the judge of the probate court stated that he had anticipated a letter from Byrom stating that he would be unable to attend the hearing. It appears, however, that the letter did not arrive because the court ordered the bailiff to call Byrom's name at the courthouse door. Byrom did not respond and did not appear at the hearing. Further, Anderson's attorney stated that all parties were given notice of the hearing. Subsequently, the probate court granted the motion for a constructive trust. In its order, the probate court found that "[a]ll persons entitled to citation were properly cited."

At the hearing on Byrom's petition for writ of habeas corpus, Byrom's attorney explained that prior to the date of the August 10 hearing, Byrom was required to be at his physician's office and, based on an understanding that he would receive something from Byrom's physician, his attorney went to a seminar in Galveston. According to Byrom's attorney, "[a]pparently" there was a setting, but he did not recall getting notice. He stated that "I'm certainly not saying I didn't, but I didn't recall getting notice of any settings on that day or I wouldn't have been gone or I would have made arrangements." Then, Byrom's attorney stated that he was "not saying I didn't. I sure don't—didn't see one; and probably if I didn't or if I don't find something, I may be filing some kind of a motion for rehearing on that receivership matter." The judge expressed his recollection of some "concern" that may have led to his allowing Byrom to bond out pending the current hearing because of "some notice issues." However, the judge declined to "point[ ] a finger at anybody." In his motion for new trial, Byrom complains about a lack of notice for a hearing on Anderson's motion for a nunc pro tunc order to correct an error in the order on the motion for a constructive trust.

### Applicable Law

The law presumes a trial court hears a case only after proper notice to the parties. *Osborn v.*

*Osborn,* 961 S.W.2d 408, 411 (Tex.App.-Houston [1st Dist.] 1997, writ denied). A recitation in a judgment that proper notice and hearing were had provides prima facie evidence of such notice, which must be accepted as true absent proof to the contrary. *Aldine Indep. Sch. Dist. v. Baty,* 946 S.W.2d 851, 852 (Tex.App.-Houston [14th Dist.] 1997, no writ). To overcome this presumption, an appellant must affirmatively show lack of notice. *Hanners v. State Bar of Tex.,* 860 S.W.2d 903, 908 (Tex.App.-Dallas 1993, writ dism'd); *In re Marriage of Lamirault,* No. 07 –01–00133–CV, 2001 WL 1166373, at *2 (Tex.App.-Amarillo Oct.3, 2001, no pet.) (not designated for publication). This burden is not discharged by mere allegations, unsupported by affidavits or other competent evidence, that proper notice was not received. *See Hanners,* 860 S.W.2d at 908; *In re Marriage of Lamirault,* 2001 WL 1166373, at *2.
***Analysis***

**\*6** As noted above, the order on the motion for a constructive trust states that "[a]ll persons entitled to citation were properly cited ." This is prima facie evidence that proper notice was given to all parties. *See Baty,* 946 S.W.2d at 852. To overcome this presumption, Byrom must affirmatively show a lack of notice. *See Hanners,* 860 S.W.2d at 908; *In re Marriage of Lamirault,* 2001 WL 1166373, at *2. At the hearing on his petition for writ of habeas corpus, Byrom's attorney alleged that he did not recall receiving a notice of hearing, but did not affirmatively state that he did not receive notice. Further, although the judge of the probate court appeared to believe that there might have been some problems with notice, he did not elaborate and declined to "point[ ] a finger at anybody. " The record does not contain a letter from the probate court or any of the parties regarding a notice of hearing. Nor does the record contain affidavits or other evidence affirmatively showing that Byrom did not receive proper notice. *See Hanners,* 860 S.W.2d at 908; *In re Marriage of Lamirault,* 2001 WL 1166373, at *2. Because Byrom merely alleged that he did not receive proper notice of the hearing on the motion for a constructive trust without any supporting affidavits or evidence, he did not meet his burden to rebut the presumption that he received proper notice. Accordingly, we overrule Byrom's third issue.

### *"SUMMARY" ARGUMENTS*

In his brief, Byrom makes three other "summary" arguments, none of which are designated as issues in his brief. In "summary" argument 4, he asserts that he is the sole beneficiary of Ruby's estate and, thus, there is no beneficiary who can claim harm from his use of funds from Ruby's estate for his benefit. Further, he claims that

Anderson and Coker are "merely" creditors and that their interest in Ruby's estate is limited to the extent of their claims. In "summary" argument 5, Byrom contends that the real parties in interest have obtained ancillary relief for their claims and that renders the contempt action moot. Both of these "summary" arguments appear to be based on his first issue, that the probate court erred by finding him in contempt and committing him to the county jail for violating its removal order. For the reasons stated in our discussion of Byrom's first issue, we lack jurisdiction to address Byrom's "summary" arguments 4 and 5.

In "summary" argument 6, Byrom argues that the probate court exceeded its authority by ordering a constructive trust because the property to be sold is his homestead, is located on land he had owned for over twenty years, and was, at least partially, paid for by community property funds belonging to him and his wife. Thus, he contends, this property should not be subject to Anderson's and Coker's claims. An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to the authorities and to the record. TEX.R.APP. P. 38.1(i). Byrom does not provide any argument or citations to authorities or the record to demonstrate how the probate court exceeded its authority. His argument consists of only conclusory statements that the probate court exceeded its authority, and that the property subject to the constructive trust was his homestead and community property. Because Byrom has failed to provide an adequate substantive analysis of this "summary" argument, he has presented nothing for our review. *See* TEX.R.APP. P. 38.1(i). Therefore, we overrule Byrom's "summary" argument 6.

### *CONCLUSION*

**\*7** Because Byrom's June 16, 2009 contempt order is not reviewable by appeal, we ***dismiss for want of jurisdiction*** his first issue, and his "summary" arguments 4 and 5. We also ***dismiss for want of jurisdiction*** that portion of Byrom's second issue regarding the award of attorney's fees to Anderson for seeking Byrom's removal as independent executor. We ***sustain*** that portion of Byrom's second issue regarding the award of attorney's fees to Anderson for the contempt action, and ***vacate*** the probate court's award of attorney's fees in its June 16, 2009 contempt order. In all other respects, we ***affirm*** the judgment of the probate court.
Tex.App.-Tyler,2011.

In re Estate of Byrom
Not Reported in S.W.3d, 2011 WL 590588
(Tex.App.-Tyler)
END OF DOCUMENT

# EXHIBIT D

***In re Estate of Byrom***, 12-12-00374-CV, 2013 WL 3967432 (Tex. App.—Tyler July 31, 2013), reh'g overruled (Oct. 9, 2013), review denied (Jan. 31, 2014).

Only the Westlaw citation is currently available.
SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION(PUBLISH)**

Court of Appeals of Texas,

Tyler.
In The ESTATE OF Ruby Renee BYROM, Deceased.
No. 12–12–00374–CV.

July 31, 2013.
Appeal from the County Court, Cherokee County, Texas.

Scott E. Rectenwald, Marshall, TX, Mr. Joseph F. Zellmer, Denton, TX, for Appellee.
Joe E. Shumate, Henderson, TX, for Appellant.

Panel consisted of WORTHEN, C.J., HOYLE, J., and BASS, Retired J., Twelfth Court of Appeals, sitting by assignment.

**MEMORANDUM OPINION**

BILL BASS, Justice.

**\*1** Jerry Byrom appeals from the county court's order for the sale of real property and appointment of a receiver. In one issue, he contends the county court erred in imposing a constructive trust on his homestead property and ordering its sale to pay guardian's fees, accounting fees, attorney's fees, and the interest thereon. We affirm.

**BACKGROUND** [FN1]

> FN1. For a somewhat more extended recital of the procedural history of this case, see *In re Estate of Byrom,* No. 12 – 09– 00279 – CV, 2011 WL 590588 ( Tex.App.-Tyler Feb. 16, 2011, pet. denied) (mem.op.).

Jerry Byrom was appointed executor of the estate of his mother, Ruby Renee Byrom. In June 2005, Roy Anderson, the temporary guardian of Mrs. Byrom's estate prior to her death, filed a $31,992.75 claim against her probate estate for temporary guardian's fees and attorney's fees. Byrom rejected the claim. Byrom also filed an inventory and appraisement of Mrs. Byrom's estate. Anderson objected to the inventory claiming that Byrom had omitted assets that existed at Mrs. Byrom's death.

On July 1, 2008, the county court removed Byrom as executor citing gross mismanagement, misappropriation of funds, and gross misconduct. On August 10, 2009, the county court granted the joint request of Anderson and Duane Coker [FN2] to impose a constructive trust on Byrom's home constructed with estate funds. The court ordered Byrom to pay $200,000.00 into the court's registry within thirty days. If Byrom failed to comply with the court's order, his home was to be sold to satisfy the estate's debts.

> FN2. Coker was the attorney ad litem for Mrs. Byrom in the guardianship proceeding.

Byrom appealed the order to this court asserting, *inter alia,* that he had no legal notice of the hearing that resulted in the order impressing a constructive trust on his homestead. *See In re Estate of Byrom,* No. 12 – 09 – 00279 – CV, 2011 WL 590588, at * 5 ( Tex.App.-Tyler Feb. 16, 2011, pet. denied) (mem.op.). Byrom also maintained that the county court exceeded its authority in imposing a constructive trust on his homestead and conditionally ordering its sale. *See id.* at * 6. In all respects pertinent to this appeal, the judgment was affirmed.

On September 4, 2012, the county court ordered the sale of part of Byrom's property, and Byrom appealed.

**THE COUNTY COURT'S ORDER**

In his sole issue, Byrom contends the county court erred in imposing a constructive trust on his homestead property and ordering its sale to pay guardian's fees, accounting fees, attorney's fees, and the interest thereon. Anderson argues that Byrom's complaints are barred by res judicata. We agree.

*Applicable Law*

The homestead of a family or of a single adult person is exempt from forced sale for the payment of all debts except for those classes of indebtedness enumerated in Article 16, Section 50(a) of the Texas Constitution. However, "[i]t has long been decided that [the] homestead and exemption laws of this State were never intended to be, and cannot be, the haven of wrongfully obtained money or properties." *Baucom v. Texam Oil Corp.,* 423 S.W.2d 434, 442 (Tex. Civ. App –El Paso 1967, writ ref'd n.r.e.). "[T]he homestead protection afforded by the Texas Constitution was never intended to protect stolen funds. *Bransom v. Standard Hardware,* 874 S.W.2d 919, 928 (Tex.App.-Fort Worth 1994, writ denied).

*2 Res judicata bars assertion of a claim in a later case when (1) there is a prior final determination on the merits in a court of competent jurisdiction, (2) the parties in the second action are the same or in privity with those in the first action, and (3) the second action is based on the same claims as were raised or could have been raised in the first action. *Travelers Ins. Co. v. Joachim,* 315 S.W.3d 860, 862 (Tex.2010). Res judicata precludes the relitigation of claims that were finally adjudicated "as well as related matters that, with the use of diligence, should have been litigated in the prior suit. " *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex.1991). Texas follows the transactional approach to res judicata barring claims arising out of the transaction or occurrence that is the subject matter of the first suit. *State & Cnty. Mut Fire Ins. Co. v. Miller,* 52 S.W.3d 693, 696 (Tex.2001).

### Discussion

Byrom contends that the trial court erred in imposing a constructive trust on property he claims as homestead and in ordering the sale of that property. **Byrom raised these same issues in the prior proceeding between the same parties and arising out of the same facts. This court ruled adversely to Appellant on both claims.** *See In re Estate of Byrom,* 2011 WL 590588, at * 7.

Therefore, the doctrine of res judicata bars the relitigation of Byrom's claims.

Moreover, the record indicates that sometime during the course of the litigation, Byrom admitted that, while executor, he paid for the construction of the home on the subject property with money from his mother's estate. Byrom was removed as executor for misappropriation of funds and gross misconduct. Now, apparently, the estate has no money to pay the claims against the estate. Byrom wrongfully used the estate's money to construct the home he now claims as homestead. The homestead law does not protect property or funds obtained with money misappropriated by a fiduciary. *See Baucom,* 423 S.W.2d at 442; *Bransom,* 874 S.W.2d at 928.

Appellant's sole issue is overruled.

### *DISPOSITION*

The judgment of the trial court is *affirmed.* Tex.App.-Tyler,2013.

In re Estate of Byrom
Not Reported in S.W.3d, 2013 WL 3967432
(Tex.App.-Tyler)
END OF DOCUMENT

# EXHIBIT E

**First Amended Nunc Pro Tunc Order for Sale of Real Property and for Appointment of Receiver ("Cherokee County Order for Sale")**

NO. 10745

| | | |
|---|---|---|
| ESTATE OF | § | IN THE COUNTY COURT |
| | § | |
| RUBY RENEE BYROM, | § | OF |
| | § | |
| DECEASED | § | CHEROKEE COUNTY, TEXAS |

## FIRST AMENDED NUNC PRO TUNC
## ORDER FOR SALE OF REAL PROPERTY
## AND FOR APPOINTMENT OF RECEIVER

On this day the Court considered the First Amended Motion for Judgment Nunc Pro Tunc of ROY P. ANDERSON.

IT IS ORDERED that the First Amended Judgment Nunc Pro Tunc be entered as follows:

Pursuant to this Court's Order dated November 16, 2009, this Court finds that 30 days have elapsed since JERRY BYROM, the prior Independent Executor of the Estate of RUBY RENEE BYROM, was ordered to deposit funds of the Estate of RUBY RENEE BYROM in the amount of $200,000.00 into the Registry of the Court of Cherokee County, Texas; that because of the failure of JERRY BYROM to deposit said funds of the Estate of RUBY RENEE BYROM into the Registry of the Court of Cherokee County, Texas, that it is in the best interest of the Estate for the following property to be sold and that the sale is necessary and advisable in order to pay the claims and judgments against the estate of RUBY RENEE BYROM, deceased. The property to be sold is described in Exhibit "A" specifically the Second Tract, which Exhibit "A" is attached hereto and by reference incorporated herein. The Court further finds that a receiver should be appointed to take charge and possession of said real property and to sell said property at private sale.

IT IS ORDERED that the property described in Exhibit "A", specifically the Second Tract, shall be sold at a private sale for cash.

IT IS FURTHER ORDERED that JILL PENN, a resident of Cherokee County, Texas, possesses the necessary qualifications, is not an attorney for or related to any party to this action, and is a proper person to be, and is hereby appointed receiver of the above-described property. On filing a receiver's bond in the amount of $1,000.00 personal conditioned as provided by law and approved by this Court, together with the Oath prescribed by law, he is authorized, subject to control of this court, to do any and all acts necessary to the property and law conduct of receivership set out below.

IT IS THEREFORE ORDERED that JILL PENN shall:

1.      Take charge and possession of the property described and commonly known as 17441 County Road 3226 South, Mount Enterprise, Texas and more particularly

40

described in Exhibit "A" attached hereto, and due to joint ownership interests, shall file a Petition to Partition to determine the divided interest of JERRY BYROM in and to said property, and shall partition said property if partitionable, and sell said property if not partitionable.

2.  If said property is partitioned in kind by the Rusk County Court, then JERRY BYROM's interest in said partitioned real property shall immediately be placed on the market for sale at a price the Receiver believes will ensure the sale of said real property within 90 days.

    a.  All costs of sale and any and all liens and judgment shall be paid at the time of closing.

    b.  All fees, charges and expenses of the Receiver shall be paid after payment of those expenses set out in "a." above.

    c.  The separate and community interest of JERRY BYROM in the net proceeds (which is defined as the gross sales price less subparagraph a. and b. above), up to the sum of $200,000.00 shall be deposited by Receiver in to the Cherokee County Registry of the Court, under cause No. 10745. Any separate and community interest sums remaining after the deposit of up to $200,000.00 as described herein, shall be delivered to JERRY BYROM by Receiver.

If said property is not partitioned in kind and is ordered sold by the Rusk County Court, then said Receiver is ordered as follows:

    a.  Receiver shall pay from the proceeds received from Rusk County Court, all fees, charges and expenses incurred by Receiver.

    b.  Receiver shall deposit a sum not to exceed $200,000.00 into the Registry of the Court of Cherokee County, Texas, in Cause No. 10745, from those funds received from the Rusk County Court after payment of subparagraph a. above.

    c.  Receiver shall deliver to JERRY BYROM any and all sums of money over and above $200,000.00.

IT IS FURTHER ORDERED that the parties shall cooperate with the Receiver, including, without limitation, signing any real estate listing agreement, showing property to prospective buyers, and vacating premises, if necessary in the opinion of the Receiver.

Receiver may enforce this Order by contempt if the parties do not cooperate.

SIGNED this _13_ day of _May_, 2013.

JUDGE PRESIDING

41

FILED
at 2:27 o'clock P M.
MAY 13 2013
LAVERNE LUSK
CLERK, COUNTY COURT CHEROKEE CO., TX
By Bar Deputy

FIRST TRACT:

Situated 19 miles S of Henderson being on the William Reagan and Josie Martinez league being the same land sold by J.H. Everett, to A.H. Hill on the 24th day of January, 1889, recorded on the 4th day of July, 1889, in the records of said county Vol. 37, Page 474 and 475;

BEGINNING at the NWC of the tract once sold by J.T. Ervin to J.S. Tipps, a stake on the E bank of Maxwell creek a R.E. 20" brs S 2 vrs.;

THENCE S with the boundary line of said Tipps 260 vrs. to offset cor. on the old league line between the Reagan and Martinez league a stake in old road leading from Glenfawn to Stophens a S.G. 18" brs. S 5 vrs.;

THENCE E on the league line 170 vrs. cor. same being another Tipps offset cor. a P.O. 10" dia. brs. S 5 vrs. a S.J. 8" brs. N 83 W 4-1/2 vrs.;

THENCE S on Tipps SBL 260 vrs. cor. on said line a Hy. 24" brs. N 55 W 10 vrs., a P.O. 6" brs. N 84 W 4 vrs.;

THENCE 520 vrs. to a cor. R.O. 20" brs. N 54 W 3 vrs. a R.O. 12" dia. brs. S 20 E. 2 vrs.;

THENCE N 520 vrs. to NEC of another tract once owned by Lewis Crawford a pine 12" brs. S 32 W 4-5/10 vrs.;

THENCE E 350 vrs. to place of beginning, containing 23-9/10 acres of the William Reagan league survey and 16.1 acres on the Josie Martinez survey, also a tract of 4 acres of land 19 miles S of Henderson, situated on the headright of the William Regan league in Rusk County, Texas.

Being the same land once sold by J.H. Everett to A.H. Hill, on the 7th day of Feb. 1902, and recorded in book 51, page 475, deed records of Rusk County.

BEGINNING at the SEC of the tract of 12 acres of Lewis Crawford on the WBL of the 40 acre block;

THENCE W with the boundary line of the said Crawford 190 vrs. to corner rock for corner;

THENCE S 121 vrs. to cor. pine 12" brs. S 10 E 8 vrs.;

THENCE E 190 vrs. to the SWC of the said 40 acre tract a R.O. 20" brs. N 54 W 8 vrs. a P.O. 12" brs. S 20 E 2 vrs.;

THENCE N 121 vrs. to place of beginning, containing in the last tract 4 acres containing in all three tracts 44 acres of land.

This being the same land described in deed dated Oct. 30, 1923, From C. N. Davis, et ux to Frank Clay, recorded in Volume 121, Page 616-617, Deed Records of Rusk County, Texas.

SECOND TRACT:

BEGINNING in the NBL of the Earl tract now owned by the said Johnson when the said NBL crosses the Maxwell branch;

THENCE E 1350 vrs. to the NBL of the Martineze League;

THENCE N 65 W with said league line, 1425 vrs. to said Maxwell branch;

THENCE down said branch in a southerly direction to the place of beginning, containing 76 acres, more or less, but heretofore bought by me from A.H. Thompson for 100 acres, the Karrant hereinafter does not cover the extreme Eastern part of the tract which is now in conflict with D.W. March on the Dow Rogers place, there being the 76 acres _____ the conflict.

This being the same land described in Deed From J.N. Johnson to Frank Clay dated October 8, 1910, recorded in Vol. 68, Page 112, Deed Records of Rusk County, Texas.

SAVE AND EXCEPT and Grantors do hereby reserve all of the oil, gas and associated hydrocarbons, but this shall in no way include coal or lignite or any other mineral mined by strip or pit mining.

This conveyance is made subject to all rights-of-way and or easements of record or that may be visible on sight.



EXHIBIT A

42

# EXHIBIT F


**Nunc Pro Tunc Order on Motion for Constructive Trust**
**("Order for Constructive Trust")**

COPY

EXHIBIT __A__

NO. 10745

| ESTATE OF | § | IN THE COUNTY COURT |
| | § | |
| RUBY RENEE BYROM, | § | OF |
| | § | |
| DECEASED | § | CHEROKEE COUNTY, TEXAS |

## NUNC PRO TUNC
## ORDER ON MOTION FOR CONSTRUCTIVE TRUST

On this day came before the Court the Motion for Constructive Trust filed by Roy P. Anderson, Plaintiff and creditor in the above cause.

**APPEARANCES**

ROY P. ANDERSON, Plaintiff, appeared by his attorney of record, David S. Bouschor, II.

Defendant JERRY BYROM, appeared in person and by his attorney of record Joe Shumate.

DUANE L. COKER, intervenor and creditor, appeared by his attorney of record Scott Rectenwald.

**FINDINGS OF COURT**

The Court, having examined the pleadings and heard the evidence and arguments of counsel, FINDS that:

(1)  Plaintiff's pleadings are in due form and contain all allegations, information, and prerequisites required by law.

(2)  This Court has jurisdiction of the parties and subject matter of this cause.

(3)  A jury was waived and all questions of fact and law were submitted to the Court.

(4)  A record of the testimony was duly reported.

(5)  All persons entitled to citation were properly cited.

(6)  Plaintiff was awarded a judgment against the Estate of RUBY RENEE BYROM, deceased, in Cause No. 7773 on April 23, 2007, in the amount of $31,992.75 with interest at 6% per year from date of judgment until paid.

(7)  By Order of this Court entered December 8, 2008, Plaintiff was awarded a judgment against the Estate of RUBY RENEE BYROM, deceased, in the amount of $14,034.10.

(8)  By Order of this Court entered December 8, 2008 JERRY BYROM was ordered to deposit property of the Estate of RUBY RENEE BYROM in the amount of $85,000.00 in the Registry of the Court of Cherokee County, Texas to be used to pay the judgments awarded Plaintiff.

(9)  On June 16, 2009, an Order Holding JERRY BYROM in contempt and for commitment to jail was entered and Plaintiff was awarded a judgment against the Estate of RUBY RENEE BYROM, deceased, in the amount of $7,058.17 with interest at 6% per year from

Order on Motion for Judgment Nunc Pro Tunc - Page 2

10

date of judgment until paid.

(10)     JERRY BYROM spent estate assets in the amount of $200,000.00 to build a house at 17441 County Road 3226 South, Mount Enterprise, Texas for his personal use and benefit.

(11)     JERRY BYROM breached his fiduciary duty to the estate of RUBY RENEE BYROM.

(12)     Due to JERRY BYROM's breach of fiduciary duty to the Estate of RUBY RENEE BYROM, the real property located at 17441 County Road 3226 South, Mount Enterprise, Texas should be encumbered by a constructive trust in the amount of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) for the benefit of the Estate of RUBY RENEE BYROM.

(13)     Plaintiff expended attorneys fees and costs in the pursuit of this constructive trust as set out below, and said fees are properly chargeable as costs of this estate and should be paid by the Estate of RUBY RENEE BYROM;

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that JERRY BYROM, breached his fiduciary duty to the Estate of RUBY RENEE BYROM.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a constructive trust in the amount of TWO HUNDRED THOUSAND DOLLARS ($200,000.00) is imposed upon the real property described in Exhibit "A", specifically the SECOND TRACT, attached hereto and by reference incorporated herein as if set out verbatim, and more commonly known as 17441 County Road 3226 South, Mount Enterprise, Texas for the benefit of the Estate of RUBY RENEE BYROM.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in the event the sum of $200,000.00 is not paid into the Registry of the Court of Cherokee County, Texas by JERRY BYROM within 30 days from the date of this Order, the Court shall enter an Order Authorizing Sale of Real Property And Appointment of Receiver, wherein the Court shall appoint a receiver to take charge and possession of said real property described in Exhibit "A", specifically the SECOND TRACT, and shall be ordered to immediately place said real property on the market for sale at a price that the receiver believes will ensure the sale of said property within 90 days.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that upon the sale of said real property, all costs of sale shall be paid at the time of closing.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the proceeds derived from the sale of said real property shall be deposited into the Registry of the Court of Cherokee County, Texas, and thereafter shall be disbursed by the Clerk of the Registry of the Court of Cherokee County, Texas to pay the creditors of the Estate of RUBY RENEE BYROM, specifically including, but not limited to Roy P. Anderson, Plaintiff, and Duane L. Coker, Intervenor.

*Attorney's Fees*

IT IS ORDERED, ADJUDGED AND DECREED that attorney's fees, expenses, and costs incurred in this constructive trust suit by Plaintiff's attorney, in the amount of $4,662.94 are taxed

as costs against the estate of RUBY RENEE BYROM and said fees, expenses, and costs shall be paid by cash, cashier's check, or money order, directly to David S. Bouschor, II. at 217 East Oak Street, Denton, TX 76201 on or before the 10th day of September, 2009. The attorney may enforce this order for fees, expenses, and costs in the attorney's own name.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff is granted Judgment against the Estate of RUBY RENEE BYROM in the sum of $4,662.94, plus post judgment interest at 6% from the date of this Order until paid, compounded annually.

SIGNED this _16_ day of _November_, 2009.

Original Signed By
Craig A Fletcher
_____
JUDGE PRESIDING

FILED
at _12:55_ o'clock _P_ M.

NOV 17 2009

LAVERNE LUSK
CLERK, COUNTY COURT CHEROKEE CO. TX
By_____dh_____ Deputy

Order on Motion for Judgment Nunc Pro Tunc - Page 4

First Tract:

Situated 19 miles S of Henderson being on the William Reagan and Josie Martinez league being the same land sold by J.H. Everett, to A.H. Hill on the 24th day of January, 1889, recorded on the 4th day of July, 1889, in the records of said county Vol. 37, Page 474 and 475;

BEGINNING at the NWC of the tract once sold by J.T. Ervin to J.S. Tipps, a stake on the E bank of Maxwell creek a R.E. 20" brs S 2 vrs.;

THENCE S with the boundary line of said Tipps 260 vrs. to offset cor. on the old league line between the Reagan and Martinez league a stake in old road leading from Glenfawn to Stephens a S.G. 18" brs. S 5 vrs.;

THENCE E on the league line 170 vrs. cor. same being another Tipps offset cor. a P.O. 10" dia. brs. S 5 vrs. a S.J. 8" brs. N 85 W 4-1/2 vrs.;

THENCE S on Tipps SBL 260 vrs. cor. on said line a Hy. 24" brs. N 55 W 10 vrs., a P.O. 6" brs. N 84 W 4 vrs.;

THENCE 520 vrs. to a cor. R.O. 20" brs. N 54 W 3 vrs. a R.O. 12" dia. brs. S 20 E. 2 vrs.;

THENCE N 520 vrs. to NEC of another tract once owned by Lewis Crawford a pine 12" brs. S 32 W 4-5/10 vrs.;

THENCE E 350 vrs. to place of beginning, containing 23-9/10 acres of the William Reagan league survey and 16.1 acres on the Josie Martinez survey, also a tract of 4 acres of land 19 miles S of Henderson, situated on the headright of the William Reagan league in Rusk County, Texas.

Being the same land once sold by J.H. Everett to A.H. Hill, on the 7th day of Feb. 1902, and recorded in book 51, page 475, deed records of Rusk County.

BEGINNING at the SEC of the tract of 12 acres of Lewis Crawford on the WBL of the 40 acre block;

THENCE W with the boundary line of the said Crawford 190 vrs. to corner rock for corner;

THENCE S 121 vrs. to cor. pine 12" brs. S 10 E 8 vrs.;

THENCE E 190 vrs. to the SWC of the said 40 acre tract a R.O. 20" brs. N 54 W 8 vrs. a P.O. 12" brs. S 20 E 2 vrs.;

THENCE N 121 vrs. to place of beginning, containing in the last tract 4 acres containing in all three tracts 44 acres of land.

This being the same land described in deed dated Oct. 30, 1923, from C. N. Davis, et ux to Frank Clay, recorded in Volume 121, Page 616-617, Deed Records of Rusk County, Texas.

SECOND TRACT:

BEGINNING in the WBL of the Earl tract now owned by the said Johnson when the said WBL crosses the Maxwell branch;

THENCE E 1350 vrs. to the NBL of the Martinez League;

THENCE N 65 W with said league line, 1425 vrs. to said Maxwell branch;

THENCE down said branch in a southerly direction to the place of beginning, containing 76 acres, more or less, but heretofore bought by me from A.H. Thompson for 100 acres, the Warrant hereinafter does not cover the extreme Eastern part of the tract which is now in conflict with D.W. March on the Dow Rogers place, there being the 76 acres _____ the conflict.

This being the same land described in Deed from J.W. Johnson to Frank Clay dated October 8, 1910, recorded in Vol. 68, Page 112, Deed Records of Rusk County, Texas.

SAVE AND EXCEPT and Grantors do hereby reserve all of the oil, gas and associated hydrocarbons, but this shall in no way include coal or lignite or any other mineral mined by strip or pit mining.

This conveyance is made subject to all rights-of-way and or easements of record or that may be visible on sight.

13

FILED

at 12:55 o'clock P.M.

NOV 17 2009

LAVERNE LUSK
CLERK, COUNTY COURT CHEROKEE CO. TX

By _____ dl _____ Deputy



EXHIBIT A

## WARRANTY DEED

STATE OF TEXAS    I

COUNTY OF RUSK    I     KNOW ALL MEN BY THESE PRESENTS:

That, we, ALTON STRICKLAND and wife, CHARLOTTE

STRICKLAND, of Nacogdoches County, Texas, for and in considera-

tion of the sum of TEN DOLLARS and other good and valuable

consideration, cash to us in hand paid, the receipt and

sufficiency of which is hereby acknowledged, have GRANTED,

SOLD and CONVEYED and by these presents do GRANT, SELL, and

CONVEY unto JERRY BYRON and wife, DIMPLE BYRON, of

825 Tyler Street, Jacksonville, Cherokee County, Texas

75766 and DOROTHY BERRY, of 901 Crockett St., Jacksonville,

Cherokee County, Texas 75766, all of our right, title and

interest in and to the following described tracts of land,

situated in Rusk County, Texas, to-wit:

First Tract:

Situated 19 miles S of Henderson being on the William
Reagan and Josie Martinez league being the same land
sold by J.H. Everett, to A.H. Hill on the 24th day of
January, 1889, recorded on the 4th day of July, 1889,
in the records of said county Vol. 37, Page 474 and
475;

BEGINNING at the NWC of the tract once sold by J.T.
Ervin to J.S. Tipps, a stake on the E bank of Maxwell
creek a R.E. 20" brs S 2 vrs.;

THENCE S with the boundary line of said Tipps 260
vrs. to offset cor. on the old league line between
the Reagan and Martinez league a stake in old road
leading from Glenfawn to Stephens a S.G. 18" brs.
S 5 vrs.;

THENCE E on the league line 170 vrs. cor. same being
another Tipps offset cor. a P.O. 10" dia. brs. S 5 vrs.
a S.J. 8" brs. N 83 W 4-1/2 vrs.;

THENCE S on Tipps SBL 260 vrs. cor. on said line a Hy.
24" brs. N 55 W 10 vrs., a P.O. 6" brs. N 84 W 4
vrs.;

THENCE 520 vrs. to a cor. R.O. 20" brs. N 54 W 3
vrs. a R.O. 12" dia. brs. S 20 E. 2 vrs.;

THENCE N 520 vrs. to NEC of another tract once owned
by Lewis Crawford a pine 12" brs. S 32 W 4-5/10
vrs.;

EXHIBIT B

THENCE E 350 vrs. to place of beginning, containing
23-9/10 acres of the William Reagan league survey
and 16.1 acres on the Josie Martinez survey, also
a tract of 4 acres of land 19 miles S of Henderson,
situated on the headright of the William Regan
league in Rusk County, Texas.

Being the same land once sold by J.H. Everett to
A.H. Hill, on the 7th day of Feb. 1902, and recorded
in book 51, page 475, deed records of Rusk County.

BEGINNING at the SEC of the tract of 12 acres of
Lewis Crawford on the WBL of the 40 acre block;

THENCE W with the boundary line of the said Crawford
190 vrs. to corner rock for corner;

THENCE S 121 vrs. to cor. pine 12" brs. S 10 E 8
vrs.;

THENCE E 190 vrs. to the SWC of the said 40 acre
tract a R.O. 20" brs. N 54 W 8 vrs. a P.O. 12"
brs. S 20 E 2 vrs.;

THENCE N 121 vrs. to place of beginning, containing
in the last tract 4 acres containing in all three
tracts 44 acres of land.

This being the same land described in deed dated
Oct. 30, 1923, from C. N. Davis, et ux to Frank
Clay, recorded in Volume 121, Page 616-617,
Deed Records of Rusk County, Texas.

SECOND TRACT:

BEGINNING in the NBL of the Earl tract now owned
by the said Johnson when the said NBL crosses the
Maxwell branch;

THENCE E 1350 vrs. to the NBL of the Martineze
League;

THENCE N 65 W with said league line, 1425 vrs. to
said Maxwell branch;

THENCE down said branch in a southerly direction
to the place of beginning, containing 76 acres,
more or less, but heretofore bought by me from
A.H. Thompson for 100 acres, the Warrant hereinafter
does not cover the extreme Eastern part of the tract
which is now in conflict with D.W. March on the
Dow Rogers place, there being the 76 acres _____
the conflict.

This being the same land described in Deed from
J.M. Johnson to Frank Clay dated October 8, 1910,
recorded in Vol. 68, Page 112, Deed Records of Rusk
County, Texas.

15

SAVE AND EXCEPT and Grantors do hereby reserve all of the oil, gas and associated hydrocarbons, but this shall in no way include coal or lignite or any other mineral mined by strip or pit mining.

This conveyance is made subject to all rights-of-way and or easements of record or that may be visible on sight.

TO HAVE AND TO HOLD the above-described premises, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the said grantees, their heirs and assigns, and we do hereby bind ourselves, our heirs, executors, and administrators to Warrant and Forever Defend all and singular, the said premises unto the said grantees, their heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

WITNESS OUR HANDS this the 24th day of JANUARY, 1986.

ALTON STRICKLAND

CHARLOTTE STRICKLAND

STATE OF TEXAS

COUNTY OF _____

This instrument was acknowledged before me this the 24th day of January, 1986, by ALTON STRICKLAND and wife, CHARLOTTE STRICKLAND.

Notary Public, State of Texas

Notary's Name Printed:

Ruthie Simon

My Commission Expires:

7-11-89

THE STATE OF TEXAS, COUNTY OF RUSK. I, Helen Sillick, County Clerk of the County Court of said county, do hereby certify that the foregoing instrument of writing, with its Certificate of Authentication, was filed for record in my office on the 11 day of Mar A.D. 19 86 at 2:40 o'clock P. M., in the _____ Records of said County, in Volume 1480 on pages 147-149.

Witness my hand and seal of County Court of said County at office in Henderson, Texas, the day and year last above written.

Clerk, County Court, Rusk County, Texas.

By _____ Deputy

16

# EXHIBIT G

**Affidavit of Daisy "Dimple" Byrom**

# AFFIDAVIT

STATE OF TEXAS       §
                            §       KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF RUSK      §

BEFORE ME, the undersigned notary public, personally appeared the person whose name is subscribed hereinbelow, and after being duly sworn, deposed and stated as follows:

"My name is Daisy D. Byrom, a/k/a Dimple Byrom, and I am the wife of Jerry Byrom. I am over the age of 18 years, have never been convicted of a felony, and am competent to make this affidavit.

Jerry Byrom and I were married on the 26th day of July, 1971, in Henderson County, Texas. We have never been divorced. In January of 1986, we purchased the two tracts or parcels of land in Rusk County, Texas, totaling 120 acres, which are described on Exhibit "A" attached hereto and referred to herein as "the property."

At the time we purchased the property, it was not our homestead; however, on or about March of 2006, we constructed a home on the property and at that time it became our homestead. This was before my husband received any property from his mother's estate. A true and correct copy of the contract with the builder is attached hereto as Exhibit "B." We have lived on the property since 2006 and live there now with four minor grandchildren.

Other than the original purchase money and construction liens on the property and a note from the bank in which the property was used as security (which was released in April of 2002 prior to building our home), I have never allowed the property to be subject to any liens or judgment.

I hereby assert any right I have to object to any execution of judgment or liens against my homestead property and the homestead property of my minor grandchildren."


_____
Daisy D. Byrom, a/k/a Dimple Byrom

**SUBSCRIBED AND SWORN TO BEFORE ME** on this the ___1st___ day of ___March___, 2010, by Daisy D. Byrom, a/k/a Dimple Byrom.

_Marian E. Taylor_
NOTARY PUBLIC, STATE OF TEXAS



MARIAN E TAYLOR
Notary Public, State of Texas
My Commission Expires
November 16, 2010

**FILED**

at ___12___ o'clock ___p__M.

MAR 09 2010

**LAVERNE LUSK**
CLERK, COUNTY COURT CHEROKEE CO. TX

By ___dh___ Deputy

-2-

# EXHIBIT H

**Affidavit of Jerry Byrom**

# AFFIDAVIT

STATE OF TEXAS     §
          §    KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF RUSK    §

BEFORE ME, the undersigned notary public, personally appeared the person whose name is subscribed hereinbelow, and after being duly sworn, deposed and stated as follows:

"My name is Jerry Byrom, and I am the husband of Daisy D. Byrom, a/k/a Dimple Byrom. I am over the age of 18 years, have never been convicted of a felony, and am competent to make this affidavit.

Daisy D. Byrom, a/k/a Dimple Byrom and I were married on the 26th day of July, 1971, in Henderson County, Texas. We have never been divorced. In January of 1986, we purchased the two tracts or parcels of land in Rusk County, Texas, totaling 120 acres referred to herein as "the property."

At the time we purchased the property, it was not our homestead; however, on or about March of 2006, we constructed a home on the property and at that time it became our homestead. This was before I received any property from my mother's estate. We have lived on the property since 2006 and live there now with two minor grandchildren.

Other than the original purchase money and construction liens on the property and a note from the bank in which the property was used as security (which was released in April of 2002 prior to building our home, I have never allowed the property to be subject to any liens or judgment.

I hereby assert any right I have to object to any execution of judgment or liens against my homestead property and the homestead property of my minor grandchildren."


_____
Jerry Byrom

**SUBSCRIBED AND SWORN TO BEFORE ME** on this the 7th day of May, 2015, by Jerry Byrom.



NOTARY PUBLIC, STATE OF TEXAS

**TEX. CONST. ART. XVI, § 50 (attached)**



**Effective: November 6, 2007**

Vernon's Texas Statutes and Codes Annotated Currentness

  Constitution of the State of Texas 1876 (Refs & Annos)
    Article XVI. General Provisions
      **§ 50. Homestead; protection from forced sale; mortgages, trust deeds and liens**
(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:

(1) the purchase money thereof, or a part of such purchase money;

(2) the taxes due thereon;

(3) an owelty of partition imposed against the entirety of the property by a court order or by a written agreement of the parties to the partition, including a debt of one spouse in favor of the other spouse resulting from a division or an award of a family homestead in a divorce proceeding;

(4) the refinance of a lien against a homestead, including a federal tax lien resulting from the tax debt of both spouses, if the homestead is a family homestead, or from the tax debt of the owner;

(5) work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon if:

(A) the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead;

(B) the contract for the work and material is not executed by the owner or the owner's spouse before the fifth day after the owner makes written application for any extension of credit for the work and material, unless the work and material are necessary to complete immediate repairs to conditions on the homestead property that materially affect the health or safety of the owner or person residing in the homestead and the owner of the homestead acknowledges such in writing;

(C) the contract for the work and material expressly provides that the owner may rescind the contract without penalty or charge within three days after the execution of the contract by all parties, unless the work and material are necessary to complete immediate repairs to conditions on the homestead property that materially affect the health or safety of the owner or person residing in the homestead and the owner of the homestead acknowledges such in writing; and

(D) the contract for the work and material is executed by the owner and the owner's spouse only at the office of a third-party lender making an extension of credit for the work and material, an attorney at law, or a title company;

(6) an extension of credit that:

(A) is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse;

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(B) is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made;

(C) is without recourse for personal liability against each owner and the spouse of each owner, unless the owner or spouse obtained the extension of credit by actual fraud;

(D) is secured by a lien that may be foreclosed upon only by a court order;

(E) does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit;

(F) is not a form of open-end account that may be debited from time to time or under which credit may be extended from time to time unless the open-end account is a home equity line of credit;

(G) is payable in advance without penalty or other charge;

(H) is not secured by any additional real or personal property other than the homestead;

(I) is not secured by homestead property that on the date of closing is designated for agricultural use as provided by statutes governing property tax, unless such homestead property is used primarily for the production of milk;

(J) may not be accelerated because of a decrease in the market value of the homestead or because of the owner's default under other indebtedness not secured by a prior valid encumbrance against the homestead;

(K) is the only debt secured by the homestead at the time the extension of credit is made unless the other debt was made for a purpose described by Subsections (a)(1)-(a)(5) or Subsection (a)(8) of this section;

(L) is scheduled to be repaid:

(i) in substantially equal successive periodic installments, not more often than every 14 days and not less often than monthly, beginning no later than two months from the date the extension of credit is made, each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment; or

(ii) if the extension of credit is a home equity line of credit, in periodic payments described under Subsection (t)(8) of this section;

(M) is closed not before:

(i) the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section;

(ii) one business day after the date that the owner of the homestead receives a copy of the loan application if not previously provided and a final itemized disclosure of the actual fees, points, interest, costs, and charges that will be charged at closing. If a bona fide emergency or another good cause exists and the lender obtains the written consent of the owner, the lender may provide the documentation to the owner or the lender may modify previously provided

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

documentation on the date of closing; and

(iii) the first anniversary of the closing date of any other extension of credit described by Subsection (a)(6) of this section secured by the same homestead property, except a refinance described by Paragraph (Q)(x)(f) of this subdivision, unless the owner on oath requests an earlier closing due to a state of emergency that:

(a) has been declared by the president of the United States or the governor as provided by law; and

(b) applies to the area where the homestead is located;

(N) is closed only at the office of the lender, an attorney at law, or a title company;

(O) permits a lender to contract for and receive any fixed or variable rate of interest authorized under statute;

(P) is made by one of the following that has not been found by a federal regulatory agency to have engaged in the practice of refusing to make loans because the applicants for the loans reside or the property proposed to secure the loans is located in a certain area:

(i) a bank, savings and loan association, savings bank, or credit union doing business under the laws of this state or the United States;

(ii) a federally chartered lending instrumentality or a person approved as a mortgagee by the United States government to make federally insured loans;

(iii) a person licensed to make regulated loans, as provided by statute of this state;

(iv) a person who sold the homestead property to the current owner and who provided all or part of the financing for the purchase;

(v) a person who is related to the homestead property owner within the second degree of affinity or consanguinity; or

(vi) a person regulated by this state as a mortgage broker; and

(Q) is made on the condition that:

(i) the owner of the homestead is not required to apply the proceeds of the extension of credit to repay another debt except debt secured by the homestead or debt to another lender;

(ii) the owner of the homestead not assign wages as security for the extension of credit;

(iii) the owner of the homestead not sign any instrument in which blanks relating to substantive terms of agreement are left to be filled in;

(iv) the owner of the homestead not sign a confession of judgment or power of attorney to the lender or to a third person to confess judgment or to appear for the owner in a judicial proceeding;

(v) at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit;

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(vi) the security instruments securing the extension of credit contain a disclosure that the extension of credit is the type of credit defined by Section 50(a)(6), Article XVI, Texas Constitution;

(vii) within a reasonable time after termination and full payment of the extension of credit, the lender cancel and return the promissory note to the owner of the homestead and give the owner, in recordable form, a release of the lien securing the extension of credit or a copy of an endorsement and assignment of the lien to a lender that is refinancing the extension of credit;

(viii) the owner of the homestead and any spouse of the owner may, within three days after the extension of credit is made, rescind the extension of credit without penalty or charge;

(ix) the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made;

(x) except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply by:

(a) paying to the owner an amount equal to any overcharge paid by the owner under or related to the extension of credit if the owner has paid an amount that exceeds an amount stated in the applicable Paragraph (E), (G), or (O) of this subdivision;

(b) sending the owner a written acknowledgement that the lien is valid only in the amount that the extension of credit does not exceed the percentage described by Paragraph (B) of this subdivision, if applicable, or is not secured by property described under Paragraph (H) or (I) of this subdivision, if applicable;

(c) sending the owner a written notice modifying any other amount, percentage, term, or other provision prohibited by this section to a permitted amount, percentage, term, or other provision and adjusting the account of the borrower to ensure that the borrower is not required to pay more than an amount permitted by this section and is not subject to any other term or provision prohibited by this section;

(d) delivering the required documents to the borrower if the lender fails to comply with Subparagraph (v) of this paragraph or obtaining the appropriate signatures if the lender fails to comply with Subparagraph (ix) of this paragraph;

(e) sending the owner a written acknowledgement, if the failure to comply is prohibited by Paragraph (K) of this subdivision, that the accrual of interest and all of the owner's obligations under the extension of credit are abated while any prior lien prohibited under Paragraph (K) remains secured by the homestead; or

(f) if the failure to comply cannot be cured under Subparagraphs (x)(a) -(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section; and

(xi) the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the extension of credit is made by a person other than a person described under Paragraph (P) of this subdivision or if the lien was not created under a written agreement with the consent of each owner and each

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

owner's spouse, unless each owner and each owner's spouse who did not initially consent subsequently consents;

(7) a reverse mortgage; or

(8) the conversion and refinance of a personal property lien secured by a manufactured home to a lien on real property, including the refinance of the purchase price of the manufactured home, the cost of installing the manufactured home on the real property, and the refinance of the purchase price of the real property.

(b) An owner or claimant of the property claimed as homestead may not sell or abandon the homestead without the consent of each owner and the spouse of each owner, given in such manner as may be prescribed by law.

(c) No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section, whether such mortgage, trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void.

(d) A purchaser or lender for value without actual knowledge may conclusively rely on an affidavit that designates other property as the homestead of the affiant and that states that the property to be conveyed or encumbered is not the homestead of the affiant.

(e) A refinance of debt secured by a homestead and described by any subsection under Subsections (a)(1)-(a)(5) that includes the advance of additional funds may not be secured by a valid lien against the homestead unless:

(1) the refinance of the debt is an extension of credit described by Subsection (a)(6) of this section; or

(2) the advance of all the additional funds is for reasonable costs necessary to refinance such debt or for a purpose described by Subsection (a)(2), (a)(3), or (a)(5) of this section.

(f) A refinance of debt secured by the homestead, any portion of which is an extension of credit described by Subsection (a)(6) of this section, may not be secured by a valid lien against the homestead unless the refinance of the debt is an extension of credit described by Subsection (a)(6) or (a)(7) of this section.

(g) An extension of credit described by Subsection (a)(6) of this section may be secured by a valid lien against homestead property if the extension of credit is not closed before the 12th day after the lender provides the owner with the following written notice on a separate instrument:

"NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION:

"SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION ALLOWS CERTAIN LOANS TO BE SECURED AGAINST THE EQUITY IN YOUR HOME. SUCH LOANS ARE COMMONLY KNOWN AS EQUITY LOANS. IF YOU DO NOT REPAY THE LOAN OR IF YOU FAIL TO MEET THE TERMS OF THE LOAN, THE LENDER MAY FORECLOSE AND SELL YOUR HOME. THE CONSTITUTION PROVIDES THAT:

"(A) THE LOAN MUST BE VOLUNTARILY CREATED WITH THE CONSENT OF EACH OWNER OF YOUR HOME AND EACH OWNER'S SPOUSE;

"(B) THE PRINCIPAL LOAN AMOUNT AT THE TIME THE LOAN IS MADE MUST NOT EXCEED AN

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

AMOUNT THAT, WHEN ADDED TO THE PRINCIPAL BALANCES OF ALL OTHER LIENS AGAINST YOUR HOME, IS MORE THAN 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME;

"(C) THE LOAN MUST BE WITHOUT RECOURSE FOR PERSONAL LIABILITY AGAINST YOU AND YOUR SPOUSE UNLESS YOU OR YOUR SPOUSE OBTAINED THIS EXTENSION OF CREDIT BY ACTUAL FRAUD;

"(D) THE LIEN SECURING THE LOAN MAY BE FORECLOSED UPON ONLY WITH A COURT ORDER;

"(E) FEES AND CHARGES TO MAKE THE LOAN MAY NOT EXCEED 3 PERCENT OF THE LOAN AMOUNT;

"(F) THE LOAN MAY NOT BE AN OPEN-END ACCOUNT THAT MAY BE DEBITED FROM TIME TO TIME OR UNDER WHICH CREDIT MAY BE EXTENDED FROM TIME TO TIME UNLESS IT IS A HOME EQUITY LINE OF CREDIT;

"(G) YOU MAY PREPAY THE LOAN WITHOUT PENALTY OR CHARGE;

"(H) NO ADDITIONAL COLLATERAL MAY BE SECURITY FOR THE LOAN;

"(I) THE LOAN MAY NOT BE SECURED BY HOMESTEAD PROPERTY THAT IS DESIGNATED FOR AGRICULTURAL USE AS OF THE DATE OF CLOSING, UNLESS THE AGRICULTURAL HOMESTEAD PROPERTY IS USED PRIMARILY FOR THE PRODUCTION OF MILK;

"(J) YOU ARE NOT REQUIRED TO REPAY THE LOAN EARLIER THAN AGREED SOLELY BECAUSE THE FAIR MARKET VALUE OF YOUR HOME DECREASES OR BECAUSE YOU DEFAULT ON ANOTHER LOAN THAT IS NOT SECURED BY YOUR HOME;

"(K) ONLY ONE LOAN DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MAY BE SECURED WITH YOUR HOME AT ANY GIVEN TIME;

"(L) THE LOAN MUST BE SCHEDULED TO BE REPAID IN PAYMENTS THAT EQUAL OR EXCEED THE AMOUNT OF ACCRUED INTEREST FOR EACH PAYMENT PERIOD;

"(M) THE LOAN MAY NOT CLOSE BEFORE 12 DAYS AFTER YOU SUBMIT A LOAN APPLICATION TO THE LENDER OR BEFORE 12 DAYS AFTER YOU RECEIVE THIS NOTICE, WHICHEVER DATE IS LATER; AND MAY NOT WITHOUT YOUR CONSENT CLOSE BEFORE ONE BUSINESS DAY AFTER THE DATE ON WHICH YOU RECEIVE A COPY OF YOUR LOAN APPLICATION IF NOT PREVIOUSLY PROVIDED AND A FINAL ITEMIZED DISCLOSURE OF THE ACTUAL FEES, POINTS, INTEREST, COSTS, AND CHARGES THAT WILL BE CHARGED AT CLOSING; AND IF YOUR HOME WAS SECURITY FOR THE SAME TYPE OF LOAN WITHIN THE PAST YEAR, A NEW LOAN SECURED BY THE SAME PROPERTY MAY NOT CLOSE BEFORE ONE YEAR HAS PASSED FROM THE CLOSING DATE OF THE OTHER LOAN, UNLESS ON OATH YOU REQUEST AN EARLIER CLOSING DUE TO A DECLARED STATE OF EMERGENCY;

"(N) THE LOAN MAY CLOSE ONLY AT THE OFFICE OF THE LENDER, TITLE COMPANY, OR AN ATTORNEY AT LAW;

"(O) THE LENDER MAY CHARGE ANY FIXED OR VARIABLE RATE OF INTEREST AUTHORIZED BY

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

STATUTE;

"(P) ONLY A LAWFULLY AUTHORIZED LENDER MAY MAKE LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

"(Q) LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST:

"(1) NOT REQUIRE YOU TO APPLY THE PROCEEDS TO ANOTHER DEBT EXCEPT A DEBT THAT IS SECURED BY YOUR HOME OR OWED TO ANOTHER LENDER;

"(2) NOT REQUIRE THAT YOU ASSIGN WAGES AS SECURITY;

"(3) NOT REQUIRE THAT YOU EXECUTE INSTRUMENTS WHICH HAVE BLANKS FOR SUBSTANTIVE TERMS OF AGREEMENT LEFT TO BE FILLED IN;

"(4) NOT REQUIRE THAT YOU SIGN A CONFESSION OF JUDGMENT OR POWER OF ATTORNEY TO ANOTHER PERSON TO CONFESS JUDGMENT OR APPEAR IN A LEGAL PROCEEDING ON YOUR BEHALF;

"(5) PROVIDE THAT YOU RECEIVE A COPY OF YOUR FINAL LOAN APPLICATION AND ALL EXECUTED DOCUMENTS YOU SIGN AT CLOSING;

"(6) PROVIDE THAT THE SECURITY INSTRUMENTS CONTAIN A DISCLOSURE THAT THIS LOAN IS A LOAN DEFINED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION;

"(7) PROVIDE THAT WHEN THE LOAN IS PAID IN FULL, THE LENDER WILL SIGN AND GIVE YOU A RELEASE OF LIEN OR AN ASSIGNMENT OF THE LIEN, WHICHEVER IS APPROPRIATE;

"(8) PROVIDE THAT YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THE LOAN WITHOUT PENALTY OR CHARGE;

"(9) PROVIDE THAT YOU AND THE LENDER ACKNOWLEDGE THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LOAN CLOSES; AND

"(10) PROVIDE THAT THE LENDER WILL FORFEIT ALL PRINCIPAL AND INTEREST IF THE LENDER FAILS TO COMPLY WITH THE LENDER'S OBLIGATIONS UNLESS THE LENDER CURES THE FAILURE TO COMPLY AS PROVIDED BY SECTION 50(a)(6)(Q)(x), ARTICLE XVI, OF THE TEXAS CONSTITUTION; AND

"(R) IF THE LOAN IS A HOME EQUITY LINE OF CREDIT:

"(1) YOU MAY REQUEST ADVANCES, REPAY MONEY, AND REBORROW MONEY UNDER THE LINE OF CREDIT;

"(2) EACH ADVANCE UNDER THE LINE OF CREDIT MUST BE IN AN AMOUNT OF AT LEAST $4,000;

"(3) YOU MAY NOT USE A CREDIT CARD, DEBIT CARD, OR SIMILAR DEVICE, OR PREPRINTED CHECK THAT YOU DID NOT SOLICIT, TO OBTAIN ADVANCES UNDER THE LINE OF CREDIT;

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

"(4) ANY FEES THE LENDER CHARGES MAY BE CHARGED AND COLLECTED ONLY AT THE TIME THE LINE OF CREDIT IS ESTABLISHED AND THE LENDER MAY NOT CHARGE A FEE IN CONNECTION WITH ANY ADVANCE;

"(5) THE MAXIMUM PRINCIPAL AMOUNT THAT MAY BE EXTENDED, WHEN ADDED TO ALL OTHER DEBTS SECURED BY YOUR HOME, MAY NOT EXCEED 80 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME ON THE DATE THE LINE OF CREDIT IS ESTABLISHED;

"(6) IF THE PRINCIPAL BALANCE UNDER THE LINE OF CREDIT AT ANY TIME EXCEEDS 50 PERCENT OF THE FAIR MARKET VALUE OF YOUR HOME, AS DETERMINED ON THE DATE THE LINE OF CREDIT IS ESTABLISHED, YOU MAY NOT CONTINUE TO REQUEST ADVANCES UNDER THE LINE OF CREDIT UNTIL THE BALANCE IS LESS THAN 50 PERCENT OF THE FAIR MARKET VALUE; AND

"(7) THE LENDER MAY NOT UNILATERALLY AMEND THE TERMS OF THE LINE OF CREDIT.

"THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION. YOUR RIGHTS ARE GOVERNED BY SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION, AND NOT BY THIS NOTICE."

If the discussions with the borrower are conducted primarily in a language other than English, the lender shall, before closing, provide an additional copy of the notice translated into the written language in which the discussions were conducted.

(h) A lender or assignee for value may conclusively rely on the written acknowledgment as to the fair market value of the homestead property made in accordance with Subsection (a)(6)(Q)(ix) of this section if:

(1) the value acknowledged to is the value estimate in an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6); and

(2) the lender or assignee does not have actual knowledge at the time of the payment of value or advance of funds by the lender or assignee that the fair market value stated in the written acknowledgment was incorrect.

(i) This subsection shall not affect or impair any right of the borrower to recover damages from the lender or assignee under applicable law for wrongful foreclosure. A purchaser for value without actual knowledge may conclusively presume that a lien securing an extension of credit described by Subsection (a)(6) of this section was a valid lien securing the extension of credit with homestead property if:

(1) the security instruments securing the extension of credit contain a disclosure that the extension of credit secured by the lien was the type of credit defined by Section 50(a)(6), Article XVI, Texas Constitution;

(2) the purchaser acquires the title to the property pursuant to or after the foreclosure of the voluntary lien; and

(3) the purchaser is not the lender or assignee under the extension of credit.

(j) Subsection (a)(6) and Subsections (e)-(i) of this section are not severable, and none of those provisions would have been enacted without the others. If any of those provisions are held to be preempted by the laws of the United States, all of those provisions are invalid. This subsection shall not apply to any lien or extension of credit made after January 1, 1998, and before the date any provision under Subsection (a)(6) or Subsections (e)-(i) is held to be preempted.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

<Text of subsec. (k) effective until approval of the constitutional amendment proposed by Acts 2013, 83rd Leg., S.J.R. No. 18, at the Nov. 5, 2013 election>

(k) "Reverse mortgage" means an extension of credit:

(1) that is secured by a voluntary lien on homestead property created by a written agreement with the consent of each owner and each owner's spouse;

(2) that is made to a person who is or whose spouse is 62 years or older;

(3) that is made without recourse for personal liability against each owner and the spouse of each owner;

(4) under which advances are provided to a borrower based on the equity in a borrower's homestead;

(5) that does not permit the lender to reduce the amount or number of advances because of an adjustment in the interest rate if periodic advances are to be made;

(6) that requires no payment of principal or interest until:

(A) all borrowers have died;

(B) the homestead property securing the loan is sold or otherwise transferred;

(C) all borrowers cease occupying the homestead property for a period of longer than 12 consecutive months without prior written approval from the lender; or

(D) the borrower:

(i) defaults on an obligation specified in the loan documents to repair and maintain, pay taxes and assessments on, or insure the homestead property;

(ii) commits actual fraud in connection with the loan; or

(iii) fails to maintain the priority of the lender's lien on the homestead property, after the lender gives notice to the borrower, by promptly discharging any lien that has priority or may obtain priority over the lender's lien within 10 days after the date the borrower receives the notice, unless the borrower:

(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to the lender;

(b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings so as to prevent the enforcement of the lien or forfeiture of any part of the homestead property; or

(c) secures from the holder of the lien an agreement satisfactory to the lender subordinating the lien to all amounts secured by the lender's lien on the homestead property;

(7) that provides that if the lender fails to make loan advances as required in the loan documents and if the lender fails to cure the default as required in the loan documents after notice from the borrower, the lender forfeits all principal and interest of the reverse mortgage, provided, however, that this subdivision does not apply

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

when a governmental agency or instrumentality takes an assignment of the loan in order to cure the default;

(8) that is not made unless the owner of the homestead attests in writing that the owner received counseling regarding the advisability and availability of reverse mortgages and other financial alternatives;

(9) that requires the lender, at the time the loan is made, to disclose to the borrower by written notice the specific provisions contained in Subdivision (6) of this subsection under which the borrower is required to repay the loan;

(10) that does not permit the lender to commence foreclosure until the lender gives notice to the borrower, in the manner provided for a notice by mail related to the foreclosure of liens under Subsection (a)(6) of this section, that a ground for foreclosure exists and gives the borrower at least 30 days, or at least 20 days in the event of a default under Subdivision (6)(D)(iii) of this subsection, to:

(A) remedy the condition creating the ground for foreclosure;

(B) pay the debt secured by the homestead property from proceeds of the sale of the homestead property by the borrower or from any other sources; or

(C) convey the homestead property to the lender by a deed in lieu of foreclosure; and

(11) that is secured by a lien that may be foreclosed upon only by a court order, if the foreclosure is for a ground other than a ground stated by Subdivision (6)(A) or (B) of this subsection.

<Text of subsec. (k) effective upon approval of the constitutional amendment proposed by Acts 2013, 83rd Leg., S.J.R. No. 18, at the Nov. 5, 2013 election>

(k) "Reverse mortgage" means an extension of credit:

(1) that is secured by a voluntary lien on homestead property created by a written agreement with the consent of each owner and each owner's spouse;

(2) that is made to a person who is or whose spouse is 62 years or older;

(3) that is made without recourse for personal liability against each owner and the spouse of each owner;

(4) under which advances are provided to a borrower:

(A) based on the equity in a borrower's homestead; or

(B) for the purchase of homestead property that the borrower will occupy as a principal residence;

(5) that does not permit the lender to reduce the amount or number of advances because of an adjustment in the interest rate if periodic advances are to be made;

(6) that requires no payment of principal or interest until:

(A) all borrowers have died;

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(B) the homestead property securing the loan is sold or otherwise transferred;

(C) all borrowers cease occupying the homestead property for a period of longer than 12 consecutive months without prior written approval from the lender;

(C-1) if the extension of credit is used for the purchase of homestead property, the borrower fails to timely occupy the homestead property as the borrower's principal residence within a specified period after the date the extension of credit is made that is stipulated in the written agreement creating the lien on the property; or

(D) the borrower:

(i) defaults on an obligation specified in the loan documents to repair and maintain, pay taxes and assessments on, or insure the homestead property;

(ii) commits actual fraud in connection with the loan; or

(iii) fails to maintain the priority of the lender's lien on the homestead property, after the lender gives notice to the borrower, by promptly discharging any lien that has priority or may obtain priority over the lender's lien within 10 days after the date the borrower receives the notice, unless the borrower:

(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to the lender;

(b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings so as to prevent the enforcement of the lien or forfeiture of any part of the homestead property; or

(c) secures from the holder of the lien an agreement satisfactory to the lender subordinating the lien to all amounts secured by the lender's lien on the homestead property;

(7) that provides that if the lender fails to make loan advances as required in the loan documents and if the lender fails to cure the default as required in the loan documents after notice from the borrower, the lender forfeits all principal and interest of the reverse mortgage, provided, however, that this subdivision does not apply when a governmental agency or instrumentality takes an assignment of the loan in order to cure the default;

(8) that is not made unless the prospective borrower and the spouse of the prospective borrower attest in writing that the prospective borrower and the prospective borrower's spouse received counseling regarding the advisability and availability of reverse mortgages and other financial alternatives that was completed not earlier than the 180th day nor later than the 5th day before the date the extension of credit is closed;

(9) that is not closed before the 12th day after the date the lender provides to the prospective borrower the following written notice on a separate instrument, which the lender or originator and the borrower must sign for the notice to take effect:

"IMPORTANT NOTICE TO BORROWERS RELATED TO YOUR REVERSE MORTGAGE

"UNDER THE TEXAS TAX CODE, CERTAIN ELDERLY PERSONS MAY DEFER THE COLLECTION OF PROPERTY TAXES ON THEIR RESIDENCE HOMESTEAD. BY RECEIVING THIS REVERSE MORTGAGE YOU MAY BE REQUIRED TO FORGO ANY PREVIOUSLY APPROVED DEFERRAL OF PROPERTY TAX COLLECTION AND YOU MAYBE REQUIRED TO PAY PROPERTY TAXES ON AN ANNUAL BASIS ON THIS PROPERTY.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

"THE LENDER MAY FORECLOSE THE REVERSE MORTGAGE AND YOU MAY LOSE YOUR HOME IF:

"(A) YOU DO NOT PAY THE TAXES OR OTHER ASSESSMENTS ON THE HOME EVEN IF YOU ARE ELIGIBLE TO DEFER PAYMENT OF PROPERTY TAXES;

"(B) YOU DO NOT MAINTAIN AND PAY FOR PROPERTY INSURANCE ON THE HOME AS REQUIRED BY THE LOAN DOCUMENTS;

"(C) YOU FAIL TO MAINTAIN THE HOME IN A STATE OF GOOD CONDITION AND REPAIR;

"(D) YOU CEASE OCCUPYING THE HOME FOR A PERIOD LONGER THAN 12 CONSECUTIVE MONTHS WITHOUT THE PRIOR WRITTEN APPROVAL FROM THE LENDER OR, IF THE EXTENSION OF CREDIT   IS USED FOR THE PURCHASE OF THE HOME, YOU FAIL TO TIMELY OCCUPY THE HOME AS YOUR PRINCIPAL RESIDENCE WITHIN A PERIOD OF TIME AFTER THE EXTENSION OF CREDIT IS MADE THAT IS STIPULATED IN THE WRITTEN AGREEMENT CREATING THE LIEN ON THE HOME;

"(E) YOU SELL THE HOME OR OTHERWISE TRANSFER THE HOME WITHOUT PAYING OFF THE LOAN;

"(F) ALL BORROWERS HAVE DIED AND THE LOAN IS NOT REPAID;

"(G) YOU COMMIT ACTUAL FRAUD IN CONNECTION WITH THE LOAN; OR

"(H) YOU FAIL TO MAINTAIN THE PRIORITY OF THE LENDER'S LIEN ON THE HOME, AFTER THE LENDER GIVES NOTICE TO YOU, BY PROMPTLY DISCHARGING ANY LIEN THAT HAS PRIORITY OR MAY OBTAIN PRIORITY OVER THE LENDER'S LIEN WITHIN 10 DAYS AFTER THE DATE YOU RECEIVE THE NOTICE, UNLESS YOU:

"(1) AGREE IN WRITING TO THE PAYMENT OF THE OBLIGATION SECURED BY THE LIEN IN A MANNER ACCEPTABLE TO THE LENDER;

"(2) CONTEST IN GOOD FAITH THE LIEN BY, OR DEFEND AGAINST ENFORCEMENT OF THE LIEN IN, LEGAL PROCEEDINGS SO AS TO PREVENT THE ENFORCEMENT OF THE LIEN OR FORFEITURE OF ANY PART OF THE HOME; OR

"(3) SECURE FROM THE HOLDER OF THE LIEN AN AGREEMENT SATISFACTORY TO THE LENDER SUBORDINATING THE LIEN TO ALL AMOUNTS SECURED BY THE LENDER'S LIEN ON THE HOME.

"IF A GROUND FOR FORECLOSURE EXISTS, THE LENDER MAY NOT COMMENCE FORECLOSURE UNTIL THE LENDER GIVES YOU WRITTEN NOTICE BY MAIL THAT A GROUND FOR FORECLOSURE EXISTS AND GIVES YOU AN OPPORTUNITY TO REMEDY THE CONDITION CREATING THE GROUND FOR FORECLOSURE OR TO PAY THE REVERSE MORTGAGE DEBT WITHIN THE TIME PERMITTED BY SECTION 50(k)(10), ARTICLE XVI, OF THE TEXAS CONSTITUTION.THE LENDER MUST OBTAIN A COURT ORDER FOR FORECLOSURE EXCEPT THAT A COURT ORDER IS NOT REQUIRED IF THE FORECLOSURE OCCURS BECAUSE:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

"(1) ALL BORROWERS HAVE DIED; OR

"(2) THE HOMESTEAD PROPERTY SECURING THE LOAN IS SOLD OR OTHERWISE TRANSFERRED."

"YOU SHOULD CONSULT WITH YOUR HOME COUNSELOR OR AN ATTORNEY IF YOU HAVE ANY CONCERNS ABOUT THESE OBLIGATIONS BEFORE YOU CLOSE YOUR REVERSE MORTGAGE LOAN. TO LOCATE AN ATTORNEY IN YOUR AREA, YOU MAY WISH TO CONTACT THE STATE BAR OF TEXAS."

"THIS NOTICE IS ONLY A SUMMARY OF YOUR RIGHTS UNDER THE TEXAS CONSTITUTION. YOUR RIGHTS ARE GOVERNED IN PART BY SECTION 50, ARTICLE XVI, OF THE TEXAS CONSTITUTION, AND NOT BY THIS NOTICE.";

(10) that does not permit the lender to commence foreclosure until the lender gives notice to the borrower, in the manner provided for a notice by mail related to the foreclosure of liens under Subsection (a)(6) of this section, that a ground for foreclosure exists and gives the borrower at least 30 days, or at least 20 days in the event of a default under Subdivision (6)(D)(iii) of this subsection, to:

(A) remedy the condition creating the ground for foreclosure;

(B) pay the debt secured by the homestead property from proceeds of the sale of the homestead property by the borrower or from any other sources; or

(C) convey the homestead property to the lender by a deed in lieu of foreclosure; and

(11) that is secured by a lien that may be foreclosed upon only by a court order, if the foreclosure is for a ground other than a ground stated by Subdivision (6)(A) or (B) of this subsection.

(l) Advances made under a reverse mortgage and interest on those advances have priority over a lien filed for record in the real property records in the county where the homestead property is located after the reverse mortgage is filed for record in the real property records of that county.

(m) A reverse mortgage may provide for an interest rate that is fixed or adjustable and may also provide for interest that is contingent on appreciation in the fair market value of the homestead property. Although payment of principal or interest shall not be required under a reverse mortgage until the entire loan becomes due and payable, interest may accrue and be compounded during the term of the loan as provided by the reverse mortgage loan agreement.

(n) A reverse mortgage that is secured by a valid lien against homestead property may be made or acquired without regard to the following provisions of any other law of this state:

(1) a limitation on the purpose and use of future advances or other mortgage proceeds;

(2) a limitation on future advances to a term of years or a limitation on the term of open-end account advances;

(3) a limitation on the term during which future advances take priority over intervening advances;

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(4) a requirement that a maximum loan amount be stated in the reverse mortgage loan documents;

(5) a prohibition on balloon payments;

(6) a prohibition on compound interest and interest on interest;

(7) a prohibition on contracting for, charging, or receiving any rate of interest authorized by any law of this state authorizing a lender to contract for a rate of interest; and

(8) a requirement that a percentage of the reverse mortgage proceeds be advanced before the assignment of the reverse mortgage.

(o) For the purposes of determining eligibility under any statute relating to payments, allowances, benefits, or services provided on a means-tested basis by this state, including supplemental security income, low-income energy assistance, property tax relief, medical assistance, and general assistance:

(1) reverse mortgage loan advances made to a borrower are considered proceeds from a loan and not income; and

(2) undisbursed funds under a reverse mortgage loan are considered equity in a borrower's home and not proceeds from a loan.

(p) The advances made on a reverse mortgage loan under which more than one advance is made must be made according to the terms established by the loan documents by one or more of the following methods:

(1) an initial advance at any time and future advances at regular intervals;

(2) an initial advance at any time and future advances at regular intervals in which the amounts advanced may be reduced, for one or more advances, at the request of the borrower;

(3) an initial advance at any time and future advances at times and in amounts requested by the borrower until the credit limit established by the loan documents is reached;

(4) an initial advance at any time, future advances at times and in amounts requested by the borrower until the credit limit established by the loan documents is reached, and subsequent advances at times and in amounts requested by the borrower according to the terms established by the loan documents to the extent that the outstanding balance is repaid; or

(5) at any time by the lender, on behalf of the borrower, if the borrower fails to timely pay any of the following that the borrower is obligated to pay under the loan documents to the extent necessary to protect the lender's interest in or the value of the homestead property:

(A) taxes;

(B) insurance;

(C) costs of repairs or maintenance performed by a person or company that is not an employee of the lender or a person or company that directly or indirectly controls, is controlled by, or is under common control with the lender;

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(D) assessments levied against the homestead property; and

(E) any lien that has, or may obtain, priority over the lender's lien as it is established in the loan documents.

(q) To the extent that any statutes of this state, including without limitation, Section 41.001 of the Texas Property Code, purport to limit encumbrances that may properly be fixed on homestead property in a manner that does not permit encumbrances for extensions of credit described in Subsection (a)(6) or (a)(7) of this section, the same shall be superseded to the extent that such encumbrances shall be permitted to be fixed upon homestead property in the manner provided for by this amendment.

(r) The supreme court shall promulgate rules of civil procedure for expedited foreclosure proceedings related to the foreclosure of liens under Subsection (a)(6) of this section and to foreclosure of a reverse mortgage lien that requires a court order.

(s) The Finance Commission of Texas shall appoint a director to conduct research on the availability, quality, and prices of financial services and research the practices of business entities in the state that provide financial services under this section. The director shall collect information and produce reports on lending activity of those making loans under this section. The director shall report his or her findings to the legislature not later than December 1 of each year.

(t) A home equity line of credit is a form of an open-end account that may be debited from time to time, under which credit may be extended from time to time and under which:

(1) the owner requests advances, repays money, and reborrows money;

(2) any single debit or advance is not less than $4,000;

(3) the owner does not use a credit card, debit card, or similar device, or preprinted check unsolicited by the borrower, to obtain an advance;

(4) any fees described by Subsection (a)(6)(E) of this section are charged and collected only at the time the extension of credit is established and no fee is charged or collected in connection with any debit or advance;

(5) the maximum principal amount that may be extended under the account, when added to the aggregate total of the outstanding principal balances of all indebtedness secured by the homestead on the date the extension of credit is established, does not exceed an amount described under Subsection (a)(6)(B) of this section;

(6) no additional debits or advances are made if the total principal amount outstanding exceeds an amount equal to 50 percent of the fair market value of the homestead as determined on the date the account is established;

(7) the lender or holder may not unilaterally amend the extension of credit; and

(8) repayment is to be made in regular periodic installments, not more often than every 14 days and not less often than monthly, beginning not later than two months from the date the extension of credit is established, and:

(A) during the period during which the owner may request advances, each installment equals or exceeds the amount of accrued interest; and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(B) after the period during which the owner may request advances, installments are substantially equal.

(u) The legislature may by statute delegate one or more state agencies the power to interpret Subsections (a)(5)-(a)(7), (e)-(p), and (t), of this section. An act or omission does not violate a provision included in those subsections if the act or omission conforms to an interpretation of the provision that is:

(1) in effect at the time of the act or omission; and

(2) made by a state agency to which the power of interpretation is delegated as provided by this subsection or by an appellate court of this state or the United States.

(v) A reverse mortgage must provide that:

(1) the owner does not use a credit card, debit card, preprinted solicitation check, or similar device to obtain an advance;

(2) after the time the extension of credit is established, no transaction fee is charged or collected solely in connection with any debit or advance; and

(3) the lender or holder may not unilaterally amend the extension of credit.

CREDIT(S)

Amended Nov. 6, 1973; Nov. 7, 1995; Nov. 4, 1997, eff. Jan. 1, 1998; Nov. 2, 1999; Nov. 6, 2001; Sept. 13, 2003; Nov. 8, 2005; Nov. 6, 2007.

INTERPRETIVE COMMENTARY

1993 Main Volume

The homestead exemption was a Texas creation. It was the logical development of the evolution of the changing social attitude toward debtors whereby first the person, then the personal property, and finally the real estate of the debtor were freed from the control of the creditor through the abolition of imprisonment for debt, the extension of chattel exemptions, and the adoption of the homestead exemption.

While Texas was governed by Spanish colonial law and, subsequent thereto, the law of Mexico, it became familiarized with chattel exemptions for such items as family clothing, the minimum of furniture for the family abode, and the implements of the breadwinner, none of which could be used for forced application to the payment of debts. In an agricultural community, it was no great step to extend the concept underlying these chattel exemptions to the family home and land.

The earliest homestead exemption law was the Statute of January 26, 1839 (Laws of the Republic of Texas, First Session of the Third Congress, 1839, pp. 125-126). Beyond statements to its intent and purpose, the idea of homestead exemption elicited slight notice, scarcely any comment, and no discernible opposition. Its passage was hurried through the legislature on the last day of its session with the legislators apparently unaware of the important precedent the law would establish or of the far-reaching effect it was to have.

The direct cause of the law was the United States Panic of 1837 and the ensuing depression during which numerous families lost homes and farms through foreclosures, and in the Republic of Texas business

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

became stagnate, money scarce, and credit unobtainable. Most Texans were in debt, and the young nation was in economic peril. The homestead exemption was looked upon as a necessary measure to offset the economic danger to Texans and Texas. It had a three-fold purpose: (1) to preserve the integrity of the family as the basic element of social organization, and, incidentally, to encourage colonization for in a frontier society each pioneer family was of definite value to the community; (2) to provide the debtor with a home for his family and some means to support them and to recoup his economic losses so as to prevent the family from becoming a burdensome charge upon the public; (3) to retain in pioneers the feeling of freedom and sense of independence which was deemed necessary to the continued existence of democratic institutions.

Although the Constitution of the Republic contained no provisions with reference to homestead exemptions, Texans quickly learned that homestead exemptions could not be left to the mercy of the legislators. The Fourth Congress of the Republic, in an act concerning executions (Act of February 5, 1840, sections 4 and 24, Laws of Republic of Texas, Session of Fourth Congress, pp. 93-98), annulled the law of 1839, although no explanation for this action can be found in the journals of that congress. The next legislature, however, repealed the action of the Fourth Congress and re-enacted the original homestead exemption law. (Act of December 22, 1840, Laws of Republic of Texas, Session of Fifth Congress, pp. 61-62). Consequently, the convention which drew up the Constitution of 1845, designed to provide for the government of the State of Texas after annexation by the United States, determined to safeguard the homestead by putting it beyond the reach of legislators as well as creditors by incorporating an exemption provision in the constitution.

Article VII, Section 22, of the Constitution of 1845 declared:

> The Legislature shall have power to protect by law from forced sale, a certain portion of the property of all heads of families. The homestead of a family not to exceed two hundred acres of land, (not included in a town or city,) or any town or city lot or lots, in value not to exceed two thousand dollars, shall not be subject to forced sale, for any debts hereafter contracted, nor shall the owner, if a married man, be at liberty to alienate the same, unless by consent of the wife, in such manner as the Legislature may hereafter point out.

There was little opposition in the convention to the homestead exemption as such, although it was adopted by a vote of only 42 to 14. The opposition specifically went on record as approving of the principle but objected to the wording of the measure on various grounds--the limitation on the size of the homestead was felt to be too small or too large; or objection was voiced to the provision preventing the husband from alienating the homestead without the wife's consent.

The Constitutions of 1861 and 1866 carried forward those homestead provisions. The Constitution of 1869 provided for the exemption of a rural homestead not exceeding 200 acres or an urban homestead not in excess of $5,000 evaluation without reference to improvements. The present constitution included the 1869 provisions with the added provision that a place of business might be included in an urban homestead and that certain property of an unmarried adult might be exempt as a homestead.

At the convention of 1875 opposition again arose to the provision preventing the husband from alienating the homestead without the wife's consent. But eloquent pleas were made picturing the sad effect of drunken and worthless husbands bringing their wives to want and poverty, and the provision was retained.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# TEX. PROBATE CODE § 146(a)(3)

**PAYMENT OF CLAIMS AND DELIVERY OF EXEMPTIONS AND ALLOWANCES**

(a) Duty of the Independent Executor. An independent executor, in the administration of an estate, independently of and without application to, or any action in or by the court:

(1) shall give the notices required under Sections 294 and 295;

(2) may give the notice permitted under Section 294(d) and bar a claim under that subsection;

(3) shall approve, classify, and pay, or reject, claims against the estate in the same order of priority, classification, and proration prescribed in this Code; and

(4) shall set aside and deliver to those entitled thereto exempt property and allowances for support, and allowances in lieu of exempt property, as prescribed in this Code, to the same extent and result as if the independent executor's actions had been accomplished in, and under orders of, the court.

(b) Secured Claims for Money. Within six months after the date letters are granted or within four months after the date notice is received under Section 295, whichever is later, a creditor with a claim for money secured by real or personal property of the estate must give notice to the independent executor of the creditor's election to have the creditor's claim approved as a matured secured claim to be paid in due course of administration. If the election is not made, the claim is a preferred debt and lien against the specific property securing the indebtedness and shall be paid according to the terms of the contract that secured the lien, and the claim may not be asserted against other assets of the estate. The independent executor may pay the claim before the claim matures if paying the claim before maturity is in the best interest of the estate.

(c) Liability of Independent Executor. An independent executor, in the administration of an estate, may pay at any time and without personal liability a claim for money against the estate to the extent approved and classified by the personal representative if:

(1) the claim is not barred by limitations; and

(2) at the time of payment, the independent executor reasonably believes the estate will have sufficient assets to pay all claims against the estate.

(d) Notice Required of Unsecured Creditor. An unsecured creditor who has a claim for money against an estate and receives a notice under Section 294(d) shall give notice to the independent executor of the nature and amount of the claim not later than the 120th day after the date on which the notice is received or the claim is barred.

(e) Placement of Notice. Notice required by Subsections (b) and (d) must be contained in:

(1) a written instrument that is hand-delivered with proof of receipt or mailed by certified mail, return receipt requested, to the independent executor or the executor's attorney;

(2) a pleading filed in a lawsuit with respect to the claim; or

(3) a written instrument or pleading filed in the court in which the administration of the estate is pending.

Acts 1955, 54th Leg., p. 88, ch. 55, eff. Jan. 1, 1956. Amended by Acts 1957, 55th Leg., p. 53, ch. 31, Sec. 2(c), eff. Aug. 21, 1957; Acts 1995, 74th Leg., ch. 1054, Sec. 1, eff. Jan. 1, 1996; Acts 1997, 75th Leg., ch. 1302, Sec. 8, eff. Sept. 1, 1997.

# TEX. PROBATE CODE § 147

**ENFORCEMENT OF CLAIMS BY SUIT**

Any person having a debt or claim against the estate may enforce the payment of the same by suit against the independent executor; and, when judgment is recovered against the independent executor, the execution shall run against the estate of the decedent in the hands of the independent executor which is subject to such debt. The independent executor shall not be required to plead to any suit brought against him for money until after six months from the date that an independent administration was created and the order appointing an independent executor was entered by the county court.

Acts 1955, 54th Leg., p. 88, ch. 55, eff. Jan. 1, 1956. Amended by Acts 1975, 64th Leg., p. 980, ch. 376, Sec. 1, eff. June 19, 1975; Acts 1977, 65th Leg., p. 1064, ch. 390, Sec. 4, eff. Sept. 1, 1977.